## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PANORAMIC STOCK IMAGES, LTD. | ) | Case No. 12-cv-10003 |
| d/b/a PANORAMIC IMAGES | ) | |
| Plaintiff, | ) | Hon. Judge Gary Feinerman |
| v. | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| JOHN WILEY & SONS, INC., | ) | **PLAINTIFF'S OPPOSITION TO** |
| Defendant | ) | **PARTIAL MOTION TO DISMISS** |
| | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| _____ | ) | |

### I.     INTRODUCTION

This case arises out of Wiley's unpermitted use of Panoramic's photographs in its publications. Wiley, a confirmed copyright infringer,[1] is aware that Panoramic lacks defenses on the merits, so it has filed this motion to dismiss in an attempt to convince the Court to throw out some of Panoramic's claims on the basis of procedural issues, none of which are legitimate.

First, Panoramic should not be compelled to arbitrate any claims on the basis of non-binding arbitration agreements between Wiley and one of Panoramic's licensing agents. Much as Wiley would like to reframe this as a contract action, it is not. Panoramic is suing for copyright infringement. Panoramic's infringement claims don't arise out of its Getty licenses. Panoramic is suing for Wiley's use *outside of any license.* Wiley's attempt to force Panoramic into arbitrating these claims is simply an attempt to make it more burdensome and expensive for Panoramic to resolve legitimate copyright claims.

---

[1] *See Bean v. John Wiley & Sons, Inc.*No. CV 11–08028–PCT–FJM, 2012 WL 1078662 at * 3 (D.Ariz. March 30, 2012) (granting summary judgment as to 108 claims of copyright infringement for use of Plaintiff's photographs in its education publications in excess of license limits); *see also Psihoyos v. John Wiley & Sons, Inc.,* 1:11-cv-01416-JPO, 2012 WL 5506121 at *1 (S.D.N.Y. Nov. 7, 2012) (denying Wiley's motion for a new trial and upholding a jury verdict awarding damages for willful copyright infringement).

Wiley next turns to Panoramic's copyright registrations in an attempt to whittle down Panoramic's case. Wiley claims that Panoramic cannot bring suit on group registrations that do not include the names of every author for every image in the collection, however it has not cited a single case in this circuit supporting that proposition. It is for the Copyright Office, not Wiley, to determine whether the absence of names on a registration application would have caused it to reject an application. Panoramic's allegation of registration is all that is required to survive a motion to dismiss. Wiley also argues that Panoramic should have to wait until the Copyright Office has acted on its pending registrations before bringing suit, and claims that such is the law in this jurisdiction. It is not. Numerous courts – in this jurisdiction and others – have held that a copyright claimant can sue upon submission of an application. Should the Court grant Wiley's motion to dismiss pending registration claims, those claims wouldn't disappear, they would merely be brought in subsequent additional lawsuits between the parties, causing unnecessary delay and expense. Wiley has put forth no binding authority for any of its arguments that would necessitate splitting this small case into multiple proceedings. To do so would be a waste of resources and time for the parties and the Court.

## II.  STATEMENT OF FACTS

Plaintiff Panoramic is a stock photography agency that issues licenses for use of its photographs to textbook publishers and others, including Wiley.[2] Panoramic licenses its photographs directly, and through agencies, including Getty Images.

Throughout the parties' almost twenty-year relationship, Wiley regularly exceeded the scope of the limited licenses it obtained,[3] and used Panoramic's photographs in other

---

[2] Complaint ¶ 1.
[3] Complaint ¶ 11.

publications without any license at all.[4]  Upon discovering that Wiley may have infringed his copyrights, Panoramic asked Wiley to disclose its actual uses of its photographs and cease its infringing conduct.  Rather than admit its misconduct, Wiley produced incomplete and inaccurate data regarding its actual uses.[5]

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the purpose of Rule 8(a)(2) is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"[6]  "In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party."[7]  The Seventh Circuit has described Rule 12(b)(6) and the Supreme Court's recent decisions interpreting the rule as "impos[ing] two easy-to-clear hurdles.  First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests' . . . .  Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . ."[8]

### IV.    ARGUMENT

**A.  Panoramic is not bound to arbitrate any of the copyright claims alleged in this case based on the arbitration clauses in the Wiley-Getty Agreements.**

---

[4] Complaint ¶ 12.
[5] Complaint ¶ 16.
[6] 550 U.S. 544, 555 (2007) (internal quotation marks omitted).
[7] *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009).
[8] *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*quoting Twombly*, 550 U.S. at 555).

It is undisputed that arbitration can only be compelled by agreement of the parties.[9] When arbitration is disputed the Court must decide (1) whether there is a valid agreement to arbitrate and (2) whether the dispute between the parties falls within the scope of the agreement.[10] "[A]s in the summary judgment context, the Court must give the party opposing the motion to [enforce an arbitration agreement] 'the benefit of all reasonable doubts and inferences that may arise.'"[11] Ordinary principles of contract construction require the Court determine "the parties' intentions" in this analysis.[12]

### 1. Panoramic's copyright claims do not arise out of the Wiley-Getty Agreements.

Panoramic's claims are for copyright infringement, not breach of contract. There is no dispute between the parties regarding the Wiley-Getty Agreements, or the terms of the licenses Getty issued. But, "[w]here a licensee utilizes a copyrighted work in a manner or to an extent not authorized by the license agreement, the licensee's position is no different from that of an infringer having no contractual relationship with the holder of the copyright. In both cases, the resulting cause of action is one for copyright infringement, and the claims against both arise under the copyright statutes."[13] Nimmer confirms the rule "...when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement."[14]

In the instant case, once Wiley exceeded its authorized use of Panoramic's photographs,

---

[9] *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, (1960); *AT&T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986); *Ragone v. Atlantic Video at Manhattan Center,* 595 F.3d 115, 126 (2d Cir. 2010) ("[A]rbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.") (citing *JLM Indus., Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 171 (2d Cir. 2004)).

[10] *Specht v. Netscape Communications Corp.*306 F.3d 17 (2d. Cir. 2002); *Medtronic Ave., Inc. v, Advanced Cardiovascular Systems, Inc.,* 247 F.3d 44, 54 (3d. Cir.2001).

[11] *Smith Wilson Co. v. Trading and Development Establishment*, 744 F.Supp. 14, 16 (D.D.C. Aug 31, 1990), quoting *Par–Knit Mills v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980).

[12] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

[13] *Kanakos v. MX Trading Corp.*, 216 U.S.P.Q. 1030, 1981 WL 1377 at * 2 (S.D.N.Y. 1981)

[14] 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.15[A], at 10-116 (2005).

it assumed the legal status of a 'stranger' identical to one who takes the copyrights of others never having obtained a license in the first place. Its previous contractual license relationship with Panoramic's agent is not relevant to its new status as a copyright infringer.[15] If there is no contractual relationship between the parties, *per se*, Wiley's claims for arbitration fail because they cannot meet the *Litton* requirement that the dispute "arise under the contract."

Following a somewhat different path of analysis from that taken in *Basketball Marketing*, *supra*, the court in *Desktop Images v. Ames et al.,* 929 F.Supp. 1339 (D.Colo. 1996) ended up at the same place. In *Desktop*, plaintiff alleged copyright infringements and defendant contended the following contract clause compelled arbitration. The court wrote:

> In the subject case, the Agreement states: 'The parties agree that any disputes or questions arising thereunder including the construction or application of the Agreement shall be settled by arbitration' (Compl., Ex. 2 § 16.) This is somewhat narrower than the arbitration clause in *Kamakazi* providing that "any controversy or claim arising out of, *or relating to* this agreement or the subject matter thereof or the breach thereof shall be settled by arbitration." *Kamakazi,* 684 F.2d at 229 (emphasis added). Here, the parties only agreed to arbitrate issues arising under the Agreement.
>
> A reasonable interpretation of the Agreement is that it does not contemplate arbitration of a copyright infringement action because, such action does not arise under the agreement. If there is no agreement to arbitrate such infringement, there is no basis to send the suit to arbitration. . . .
>
> As stated in a case cited by both parties, "[t]he question to be asked is not when did the acts complained about occur, but rather where do the rights and obligations which control the resolution of the dispute arise." *Merrill, Lynch,* 574 F.Supp. at 1475. The rights and obligations controlling the resolution of the issues raised in the complaint arise chiefly under the Copyright Act.
>
> This case, rather than concerning a contract dispute, i.e. the failure of Silicon/Aames to comply with the terms of the Agreement, focuses on the violation of the copyright owner's property rights arising under the act. As such, Desktop properly seeks its remedies under the Copyright Act.[16]

---

[15] *See Marshall v. New Kids on the Block*, 780 F.Supp. 1005 at 1009 (S.D.N.Y. 1991); *Kanakos, supra*; *accord*, 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.15[A], at 10-116 to 10-118 (2005).
[16] *Desktop, supra* at 1346.

Here, as in *Desktop,* Getty and Wiley only agreed to arbitrate disputes "arising from" the Wiley-Getty Agreements.[17]  Panoramic's copyright claims do not "arise from" those agreements. Hornbook contract law dictates that unless the court is convinced that one of the parties used and understood ordinary words in a different sense and the other party has reason to know it, the "plain, ordinary, and popular" meaning of the words control in contract interpretation.[18]  The arbitration clauses here do not purport to extend beyond interpretation of the contracts themselves.   In fact, the 2006 Wiley-Getty Agreement specifically provides that "the representations and warranties made by Getty Images in this Agreement . . . will be invalid if the licensed material is used by [Wiley] in any manner not specifically authorized. . .[19]  The plain meaning of the arbitration clauses here do not contemplate arbitration of copyright disputes.[20]

## 2. *The Wiley-Getty Agreements explicitly allow for claims to be litigated rather than arbitrated.*

Wiley's contention that Panoramic's copyright claims "necessarily must be deferred to an arbitration process" is contradicted by the terms of the arbitration clauses themselves[21]:

---

[17] "Any dispute" while broad in isolation is narrowed by "arising from this Agreement."

[18] 1 A. Corbin, *Contracts* § 542 (1952).

[19] 2006 Agreement, Section 5.3.

[20] *See J.D. Edwards & Co. v. SNE Enterprises, Inc.,* No. 95 C 1601, 1995 WL 688707 at *4-5 (N.D. Ill. Nov. 14, 1995) (distinguishing a contract claims from copyright claims and rejecting Defendant's contention that the Plaintiff's copyright claims arise from the breach of the licensing agreement and thus should have been submitted to arbitration.); *see also Compuware Corp. v. Health Care Svc. Corp.,* 203 F.Supp.2d 952, 956 (N.D.Ill. May 28, 2002) (finding that plaintiff's copyright claim did not "arise out of" the licensing agreement between the parties, explaining "[t]he copyright infringement claim arises purely under the Copyright Act, 17 U.S.C. §§ 101 *et seq.,* and does not depend on the license agreements, which are not required for the interpretation of that claim. . . Understanding these rights does not require interpretation of the license agreement.") (opinion withdrawn after settlement of claims by *Compuware Corp. v. Health Care Service Corp.*, No. 01C0873, 2002 WL 31598839 (N.D.Ill. Oct 31, 2002).

[21] Though Wiley includes a heavily redacted copy of a 2012 agreement, all of the invoices at issue were issued between 2006 and 2010.  Wiley conspicuously fails to include a copy of the 2011 amendment (see Aggarwal Declaration, Doc. 9-1 at 5), further calling into question the relevance of the later 2012 agreement.  Nothing in the 2012 agreement indicates that the parties intended it to retroactively apply to licenses issued in the past.

13.2. Governing Law. This Agreement will be governed in all respects by the laws of the State of New York, U.S.A., without reference to its laws relating to conflict of Jaws. Any disputes arising from this Agreement or its enforceability shall be settled by binding arbitration . . . <u>Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against Licensee in the event that, in the opinion of Getty Images, such action is necessary or desirable.</u>[22]

8.5. Governing Law. This Agreement will be governed in all respects by the laws of the State of New York, U.S.A., without reference to its laws relating to conflicts of law. Any disputes arising from this Agreement or its enforceability shall be adjudicated in the state and federal courts located in New York City, New York. . . . <u>Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against Licensee in the event that, in the opinion of Getty Images, such action is necessary or desirable.</u>[23]

According to the plain language of both "Governing Law" clauses, Getty has the right to commence "any **legal** or equitable action . . .before **any court of competent jurisdiction** to obtain **injunctive or other relief** . . ." If Panoramic is to stand in Getty's shoes, it is also entitled to exercise its right to litigate claims in court, as contemplated by the explicit language of these provisions.[24]

### B. Panoramic has properly pleaded ownership of copyrights in the photographs.

To state a claim for copyright infringement, Plaintiff need only allege (1) ownership of a valid copyright and (2) unauthorized use.[25]

---

[22] Doc. 9-2, 2006 Agreement, emphasis added.

[23] Doc. 9-3. 2010 Agreement, emphasis added.

[24] However, should the Court determine that the claims at issue should be arbitrated, a stay, rather than dismissal, is the appropriate course of action. *See Interplastic Corp. v. Hudson Solid Surfaces Intern., L.L.C.,* No. 09-587, 2009 WL 4038674 at *4 (D.Minn. Nov. 17, 2009) ("The law is clear-where a court finds under that FAA that claims are governed by a valid arbitration agreement, the relief is limited to compelling arbitration and staying the litigation of those arbitrable claims. The FAA does not give the Court the authority to dismiss the counterclaims.") (citing cases).

[25] *See Store Décor Div. of Jas Intern., Inc., v Stylex Worldwide Industries, Ltd.,* 767 F.Supp. 181, 185 (N.D. Ill. 1991) ("To state a claim for copyright infringement, a plaintiff must allege ownership of a valid (*continued*)

7

### 1. *Failure to list each individual author's name on a group copyright registration does not bar suit for copyright infringement.*

Wiley alleges that Panoramic made an error in its application for registration of some of the photographs in suit – by not identifying the author of each image - and as a result, it should not be allowed to bring suit. Wiley is putting the cart before the horse. At this stage, Panoramic only needs to plead copyright ownership and unauthorized use. Even if McGraw's interpretation of § 409 were correct – and it is not[26] – it does not necessarily follow that Panoramic cannot bring copyright claims based on these registrations.

Wiley cites several cases from other districts that allegedly compel this result.[27] Two of these non-precedential decisions Wiley cites are currently on appeal;[28] and one case[29] is still pending in the district court.[30] And, importantly, the United States of America filed *amicus* briefs in the two appeals in support of reversing these decisions because they are contrary to the

---

copyright and "copying" of the copyrighted material by the defendant."); *see also Bell v. Combined Registry*, 397 F.Supp. 1241 (N.D. Ill. 1975).

[26] *See Metropolitan Regional Information Systems, Inc. v, American Home Realty Network,* No. 12–cv–00954–AW, 2012 WL 3711513 at *10-12 (D.Md. August 24, 2013) (finding that copyright protection extended to the individual photos despite the fact that the individual authors were not identified in the application for registration).

[27] *See Bean v. Houghton Mifflin Harcourt Publ'g Co.,* No. CV 10-8034-PCT-DGC, 2010 WL 3168624 (D. Ariz. Aug. 10, 2010); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co. et al.,* No. 3:09-CV-0061-HRH, 2010 WL 3785720 (D. Ak. Sept. 21, 2010); *Muench v. Houghton Mifflin Harcourt Publ'g Co., et al.,* No. 09-CV-2669 (LAP), 2010 WL 1838874 (S.D.N.Y. May 4, 2010).

[28] *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co. et al.,* Appeal No. 10-36010 (9th Cir.), oral argument held July 27, 2011; *Bean v. Houghton Mifflin Harcourt Publ'g Co.,* Appeal No. 10-16771 (9th Cir.).

[29] *Muench v. Houghton Mifflin Harcourt Publ'g Co., et al.,* No. 09-CV-2669 (LAP) (S.D.N.Y.).

[30] *Bean et al. v. Pearson Education, Inc.* No. CV-11-8030- PCT-PGR, 2011 WL 1882367 (D. Ariz. May 17, 2011) and *Bean v. John Wiley & Sons, Inc.,* No. 11 Civ. 8028- PCT-FJM, 2011 WL 3348959 (D. Ariz. Aug 3, 2011), both involved the same plaintiff and the same copyright registrations, and were in the same court, as the dismissed claims in *Bean v. Houghton Mifflin Harcourt Publishing Co.* These decisions simply followed the *Bean v. Houghton Mifflin Harcourt Publishing Co.* decision, without analysis.

Copyright Act.[31]  A decision from the Ninth Circuit is pending on this precise issue, having been

briefed, argued, and submitted on July 27, 2011 in *Alaska Stock v. Houghton Mifflin Harcourt et

al*.   The decisions cited by Wiley are not binding on this Court, and are likely soon to be

overturned for the reasons outlined below, and more fully discussed in the attached brief.[32]

First, § 409 of the Copyright Act does not require detailed information as to the

underlying discrete works in order for a copyright registration to extend to those separate and

previously created images.  The "author or authors" in § 409 refers to the creator(s) of the

compilation work itself – not the authors of the sometimes tens of thousands of individual

photographs included in the work.  On its face, § 409(2) requires the author or authors of "a

work," *singular*, be included on the form.[33]  Subsections (3) through (8) similarly all state that

the information provided will pertain to a *single* work.[34]  The statute therefore contemplates that,

while there may be more than one author (through the repeated use of the phrase "author or

authors"), there will be only one *work*, and it is the author or authors of *that work* which must be

included on the registration application.  It follows that § 409 only requires that the author or

authors and title of the *compilation work* must be listed on the registration application.

Even if § 409 were to be read to require inclusion of every author name on a group registration,

Panoramic is still entitled to bring suit based on its group registrations pursuant to 17 U.S.C. §

411 (b):

---

[31] *See* Exhibit A hereto, Brief for the United States of America as Amicus Curiae in Support of Reversal, *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co. et. al.,* Appeal No. 10-36010 (9th Cir.), Docket Entry 10.
[32] Other district courts to consider this issue have explicitly chosen not to follow these decisions. *See Metropolitan Regional Information Systems, Inc. supra* at *10-12 and Fn. 3; *see also Masterfile  Corp. v. Gale,* 2001 WL 4702862 at *1-2 (D.Utah Oct. 4, 2011).
[33] 17 U.S.C. § 409 (2) (emphasis added).
[34] *See* 17 U.S.C. § 409 (3)-(8) (all referring to "the work" or "a work").

(1) A certificate of registration satisfies the requirements of [§ 411(a)][35] and section 412, regardless of whether the certificate contains any inaccurate information, unless--

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration. [36]

"First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[37] Congress has directly answered when a certificate will meet the registration requirement in § 411(b). The 2008 amendment to 411(b) essentially creates a presumption that a copyright certificate, once issued, will satisfy the registration requirement of § 411(a) unless a defendant demonstrates *both* conditions of subsection (b)(1) are met. This amendment codifies and extends what courts have long held: "[a]bsent an intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement."[38] Thus, even if a failure to list each author of an underlying

---

[35] Section 411(a) contains the registration requirement under which Defendant makes its motion, and states, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

[36] 17 U.S.C. § 411(b).

[37] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

[38] *Johnson v. Cypress Hill*, No. Nos. 03 C 9452, 06 C 3348, 2008 WL 4878921 at *4 (N.D.Ill. July 7, 2008); *see also Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) ("the 'case law is overwhelming that inadvertent mistakes on registration certificates do not ... bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement.'"), quoting *Urantia Foundation v. Maaherra*, 114 F.3d 955, 963 (9th Cir.1997); *LZT/Filliung Partnership, LLP v. Cody/Braun & Associates, Inc.*, 117 F.Supp. 2d 745, 750 (N.D. Ill. 2000) ("Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action ..."); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 212 F.3d 477, 486 (9th Cir. 2000) *see also Harris v. Emus Records Corp.*, 734 F.2d (*continued*)

10

work was an error on Panoramic's part, its copyright infringement claims based on those registrations are still valid.

### 2. The Court should adopt the application approach for currently pending registrations, which is consistent with rulings in this Circuit, as well as the purpose of the Copyright Act.

Wiley next attacks Panoramic's pending copyright registrations. Though Wiley implies that action by the Copyright Office on an application is a clear prerequisite for suit, only some courts have adopted this approach. At the circuit level, courts have split on the question of whether copyright registration must be completed (registration approach), or simply initiated (application approach), prior to filing suit.[39] The Fifth[40] and Ninth[41] Circuits have adopted the application approach; the Tenth[42] and Eleventh[43] Circuits have adopted the registration approach.

The Seventh Circuit has not definitively adopted either approach[44], however the

---

1329, 1335 (9th Cir. 1984); *Societe Civile Succession Richard Guino v. Beseder Inc.*, 2006 WL 2917349 (D. Ariz. Oct. 6, 2006); *AA Plush, Inc. v. SKM (USA) Enterprises, Inc.,* No. CV-97-1113, 1998 WL 441471 at *9(C.D. Cal. April 15, 1998); *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1034 (C.D. Cal. 2007) ("Such mistakes as the **erroneous identification of the author of the work**, and the failure to disclose that the work is derivative, have been found to be insufficient to invalidate a copyright.").

[39] *Brooks-Ngwenya v. Indianapolis Public Schools,* 564 F.3d 804, 806 (7th Cir. 2009) ("the circuits have split over whether registration is complete when an application is made or only after the Copyright Office has acted on the application," (citing cases); *see also Hard Drive Productions, Inc., v. Does 1-55,* Case No. 2011 WL 4889094 at *3; *see also Cosmetic Ideas, Inc. v. IAC/Interactivecorp.* 606 F.3d 612, 615-616 (9th Cir. 2010) .

[40] *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386-387 (5th Cir. 1984).

[41] *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615-621 (9th Cir. 2010).

[42] *La Resolana Architects, PA v. Clay Realtors Angel Fire, supra*, 416 F.3d at 1202-1204 (abrogated in part by *Reed Elsevier*).

[43] *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir.1990) (abrogated in part by *Reed Elsevier*).

[44] Though several courts have interpreted *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003) as adopting the application approach. *See Hard Drive Productions, Inc. supra*\*3; *ee also Cosmetic Ideas, Inc. v. IAC/Interactivecorp.* 606 F.3d 612, 615-616 (9th Cir. 2010); *K-Beech, Inc. v. Doe*, No. 11–cv–02371–CMA–CBS, 2012 WL 592868 at Fn.3 (D.Colo. Feb. 23, 2012) ("The other approach, adopted by the Fifth, Seventh, and Ninth Circuits, is the "application approach," which holds that a copyright is registered at the time the copyright holder's application is received by the Copyright Office.").

application approach is more consistent with existing Seventh Circuit precedent.[45]  *In Chicago Board of Education v. Substance, Inc.,* the Seventh Circuit noted that, "although a copyright no longer need be registered with the Copyright Office to be valid, an application for registration must be filed before the copyright can be sued upon."[46]  This language implies that application for registration is sufficient to bring suit.  Subsequent decisions within the circuit have interpreted this language as being consistent with application approach.[47]  For example, in *Hard Drive Productions, Inc. v. Does,* Judge Darrah noted that,"[a]lthough the Seventh Circuit has not expressly ruled on this issue, this Circuit appears to follow the application approach."[48]  "Here, Hard Drive's allegations that it has filed an application with the Copyright Office satisfies the registration requirement of § 411(a)."[49]Last month, Chief Judge Holderman of this circuit found another copyright claimant's application for copyright registration sufficient to support a

---

[45] *Gaiman v. McFarlane,* upon which Wiley's argument relies, does not actually address the question of whether an application is sufficient to support a claim for copyright infringement.  Instead, the court was discussing whether registration with the Copyright Office served to provide the plaintiff with notice that the defendant was claiming exclusive rights to comic book characters so as to trigger the statute of limitations.  360 F.3d 644, 654-55 (7th Cir. 2004).  Likewise, *Automation By Design, Inc. v. Raybestos Products Co.,* 463 F.3d 749, 753 at Fn1 (7th Cir. 2006), also cited by Wiley, does not make any mention of whether application for registration is sufficient.  In fact, the only decision cited by Wiley even remotely on point is *TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*, No. 10 Civ. 1304, 2012 WL 394229 at *4 (N.D. Ill. Feb. 1, 2012), however that decision is completely devoid of analysis, and, like Wiley, relies solely on an out of context quote from *Gaiman.*

[46] 354 F.3d 624, 631 (7th Cir. 2003), citing 17 U.S.C. § 411(a); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a] (2003).

[47] *See, e.g. Goss Intern. Americas, Inc. v. A-American Mach. & Assembly Co.,* No. 07 C 3248, 2007 WL 4294744 at *3 (citing *Chicago Bd. of Education v. Substance, Inc.,* and noting, *"*In the instant case, plaintiff has been waiting since May 2007 for some action by the Copyright Office. In the meantime, plaintiff has allegedly suffered financial damage as a result of defendant's copying of its images, as discussed below. Additionally, the statute allows a party to sue for infringement not only after approval of a copyright registration application, but also after a refusal of that registration application. . . . It hardly seems fair, then, to refuse plaintiff the opportunity to sue for infringement until the Copyright Office takes some action when plaintiff will be able to sue after that determination, regardless of the outcome. For that reason, this court adopts the reasoning of the Fifth and Eighth Circuits and finds that plaintiff's registration is effective for purposes of initiating an infringement suit as of the day plaintiff filed its application with the Copyright Office.").

[48] No. 11 C 2798, 2011 WL 4889094 at *3, Fn.2 (N.D.Ill. Oct. 12, 2011).

[49] *Id.* at *4.

copyright infringement claim, noting that, "[t]he Seventh Circuit has interpreted § 411(a) to require that 'an application for registration must be *filed* before the copyright can be sued upon.'"[50]

Not only is the application approach consistent with Seventh Circuit precedent and other decisions from this Court, it is consistent with legislative intent, and promotes judicial economy.[51]  The Ninth Circuit conducted an in-depth analysis of the legislative history and purpose of the registration requirement of the Copyright Act, and determined that, "the application approach better fulfills Congress's purpose of providing for broad copyright protection while maintaining a robust federal registration."[52]  The court explained:

> Section 411(a) allows a party, after applying for registration, to litigate the claim whether the Copyright Office accepts or rejects the registration . . . Under the registration approach, however, a party must wait on the Copyright Office's affirmative acceptance or rejection, despite knowing that suit can proceed in either event. As the leading treatise on copyright explains, the registration approach thus creates a strange scheme:  "[G]iven that the claimant . . . will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred."  *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a][i] (2008) ("*Nimmer*").  The application approach avoids this legal limbo — and avoids prolonging the period of infringement — by allowing a litigant to proceed with an infringement suit as soon as he has taken all of the necessary steps to register the copyright at issue.[53]

The court further noted:

> The registration approach's added requirement of affirmative approval or rejection before suit thus amounts to little more than just the type of needless formality Congress generally worked to

---

[50] *Leventhal v. Schenberg,* No. 11 C 4614, 2013 WL 203311 at *5 (N.D. Ill. January 17, 2013).

[51] *See Tri-Marketing, Inc. v. Mainstream Marketing Services, Inc.,* Civil No. 09–13, 2009 WL 1408741 at *3 (D.Minn. May 19, 2009); *see also K-Beech, Inc. v. Doe,* No. 11–7083, 2012 WL 262722 at *3 (E.D.Pa. Jan. 30, 2012).

[52] *Cosmetic Ideas, Inc., supra* at 619.

[53] *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, *supra*, 606 F.3d at 619-620.

eliminate in the 1976 Act. On this point, it is telling that even many courts adopting the registration approach have recognized that construing the statute this way leads to an inefficient and peculiar result. We agree. It makes little sense to dismiss a case (which will likely be refiled in a matter of weeks or months) simply because the Copyright Office has not made a prompt decision that will have no substantive impact on whether or not a litigant can ultimately proceed.[54]

The court then explained that, "in addition to being generally inefficient, in the worst-case scenario the registration approach could cause a party to lose its ability to sue":[55]

The Act provides a three-year statute of limitations for copyright infringement actions. 17 U.S.C. § 507(b). Thus, under the registration approach, a plaintiff who applied for registration towards the end of the three-year period could see the statute of limitations expire during the time it took the Copyright Office to act on the application. *See Nimmer* § 7.16[B] [1][a][i] ("[G]iven . . . a three-year statute of limitations for recovery of all damages caused by copyright infringement, the narrow [registration] approach may indeed occasion complete inability to recover damages . . ."). This result does not square well with § 410(d)'s mandate that an application's effective registration date should be the day that a completed application is received. In specifying that registration is to be dated as of the date of application — not approval — Congress sought to ensure that an applicant did not suffer the consequences of a delay by the Register. *See H.R.Rep.* No. 94-1476 at 157, 1976 U.S.C.C.A.N. at 5773 (noting that the provision is designed to "take [ ] account of the inevitable timelag between receipt of the application and other material and the issuance of the certificate . . ."). Only the application approach fully protects litigants from any disadvantage caused by this timelag.[56]

Accordingly, the Ninth Circuit concluded that, post-*Reed Elsevier*:

[R]eceipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a). This interpretation ensures the broad copyright protection that the 1976 Act provided. It best effectuate[s] the interests of justice and promote[s] judicial economy. This approach also fully

---

[54] *Id.* at 620 (citations and internal quotation marks omitted).

[55] *Id.*

[56] *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, *supra*, 606 F.3d at 620-621.

> accomplishes the central purpose of registration — the compilation
> of a robust national register of existing copyrights — and at the
> same time avoids unfairness and waste of judicial resources.[57]

For the reasons explained by the Ninth Circuit and adopted by numerous other courts, the application approach is more appropriate than the registration approach, and should be applied in this case.

## V.    CONCLUSION

Wiley cannot force Panoramic to arbitrate some of its claims based on an arbitration clause that by its own language only applies to disputes arising out of a contract between Wiley and Getty, and allows Getty to choose to litigate in a court of law instead. Wiley's request that the Court dismiss specific claims based on questionable registration issues is likewise without merit. Panoramic's group registration applications were properly made, and were accepted by the Copyright Office. And Panoramic's pending applications are not invalid merely because the Copyright Office has not yet issued registration certificates. Should the Court dismiss those claims now, Panoramic will simply be forced to file additional complaints as each registration certificate is received. Panoramic therefore respectfully requests that the Court deny Wiley's motion in its entirety.

DATED: February 14, 2013

Plaintiff Panoramic Stock Images, Ltd. by its attorney,

s/ Amanda L. Bruss
Amanda L. Bruss
Harmon & Seidman LLC
12354 East Bates Circle
Aurora, CO 80014
Tel: 415-281-5754
amanda@harmonseidman.com

---

[57] *Id.* (citations and internal quotation marks omitted).

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of February 2013 I caused the foregoing

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** to be electronically filed

with the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

of Electronic Filing to the attorneys of record.


s/Amanda Bruss
Harmon & Seidman LLC

# EXHIBIT A

No. 10-36010

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALASKA STOCK, LLC,

Plaintiff-Appellant,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING CO.,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
HONORABLE H. RUSSEL HOLLAND
(CASE 3:09-CV-00061-HRH)

BRIEF FOR THE UNITED STATES OF AMERICA
AS AMICUS CURIAE IN SUPPORT OF REVERSAL

Of Counsel:

DAVID CARSON
 General Counsel
ROBERT KASUNIC
 Deputy General Counsel
U.S. COPYRIGHT OFFICE

TONY WEST
 Assistant Attorney General

SCOTT MCINTOSH
 (202) 514-4052
MELISSA N. PATTERSON
(202) 514-1201
 Attorneys, Appellate Staff
 Civil Division, Room 7230
 Department of Justice
 950 Pennsylvania Avenue, N.W.
 Washington, D.C.  20530-0001

# TABLE OF CONTENTS

**Page**

STATEMENT....................................................................................................... 2

    I.     Statutory and Regulatory Framework. .................................................. 3

         A.     Copyright Registration Generally. ............................................. 3

         B.     Registration of Collective Works and
                  Component Works. ................................................................... 4

    II.    Proceedings Below........................................................................... 9

SUMMARY OF ARGUMENT. .......................................................................... 12

ARGUMENT. .................................................................................................... 13

    I.     The Copyright Office Has Permissibly Interpreted
          17 U.S.C. § 409 Not To Require a Collective Work
          Registration Application to Identify the Author and
          Title of All Claimed Component Works. ........................................... 13

         A.     Section 409 Is Ambiguous Regarding Component
                  Work Registration. ................................................................. 13

         B.     This Court Should Defer to the Copyright Office's
                  Interpretation of Section 409. .................................................. 16

    II.    Even If the District Court Correctly Construed § 409,
           Appellant's Registrations Are Effective Under § 411(b)................... 24

CONCLUSION................................................................................................... 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page**

Batjac Productions Inc. v. GoodTimes Home Video Corp.,
 160 F.3d 1223 (9th Cir. 1998). ............................................ 16

Bodine v. Graco, Inc.,
 533 F.3d 1145, Section 408(c)(1). ...................................... 14

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,
 467 U.S. 837 (1984). ........................................................ 16

Data General Corp. v. Grumman System Support Corp.,
 36 F.3d 1147 (1st Cir.1994). ............................................ 27

Idearc Media Corp. v. Northwest Directories, Inc.,
 623 F. Supp. 2d 1223 (D. Or. 2008). ................................. 22

Marascalco v. Fantasy, Inc.,
 953 F.2d 469 (9th Cir. 1991). ........................................... 16

Morris v. Business Concepts, Inc.,
 259 F.3d 65 (2d Cir. 2001). .............................................. 21

Morris v. Business Concepts, Inc.,
 283 F.3d 502 (2d Cir. 2002). ............................................ 21

Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,
 684 F.2d 821 (11th Cir. 1982). ......................................... 27

Reed Elsevier, Inc. v. Muchnick,
 130 S. Ct. 1237 (2010). ................................... 3, 21, 22, 23, 27

Richlin v. Metropolitan-Goldwyn-Mayer Pictures, Inc.,
 531 F.3d 962 (9th Cir. 2008). ........................................... 17

S.O.S., Inc. v. Payday, Inc.,
   886 F.2d 1081 (9th Cir. 1989). ........................................................... 26

St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,
   573 F.3d 1186 (11th Cir. 2009). ........................................................ 26

Szabo v. Errisson,
   68 F.3d 940 (5th Cir. 1995). .............................................................. 23

United States v. Haggar Apparel Co.,
   526 U.S. 380 (1999). ......................................................................... 16

Urantia Foundation v. Maaherra,
   114 F.3d 955 (9th Cir. 1997). ............................................................. 27

Xoom, Inc. v. Imageline, Inc.,
   323 F.3d 279 (4th Cir. 2003). ............................................................. 21

**Statutes:**

17 U.S.C. § 101 ..................................................................................... 5

17 U.S.C. § 102 ..................................................................................... 3

17 U.S.C. § 103 ........................................................................... 5, 23, 24

17 U.S.C. § 201(a). ............................................................................... 3

17 U.S.C. § 201(b). ............................................................................. 23

17 U.S.C. § 201(c). ............................................................................... 5

17 U.S.C. § 201(d). ............................................................................... 5

17 U.S.C. § 408(a). ............................................................................... 3

17 U.S.C. § 408(b). ............................................................................. 20

17 U.S.C. § 408(c). .................................................................................... 6, 19

17 U.S.C. § 408(c)(2)(B). ................................................................................ 15

17 U.S.C. §§ 408-410. ..................................................................................... 1

17 U.S.C. §§ 408-412. ..................................................................................... 3

17 U.S.C. § 409 ................................................ 2, 5, 6, 12, 13, 14,  17, 19

17 U.S.C. § 409(2). ................................................................................ 13, 22

17 U.S.C. § 409(6). ........................................................................... 13, 15, 22

17 U.S.C. § 409(8). ........................................................................................ 15

17 U.S.C. § 409(9). ........................................................................................ 14

17 U.S.C. § 410(a). ..................................................................................... 3, 6

17 U.S.C. § 410(c). .................................................................................... 4, 28

17 U.S.C. § 411(a). ................................................................................... 3, 21

17 U.S.C. § 411(b). ........................................................................................ 12

17 U.S.C. § 411(b)(1). ............................................................................ 2, 4, 25

17 U.S.C. § 412. ........................................................................................ 4, 29

17 U.S.C. §§ 504-505. ..................................................................................... 4

17 U.S.C. § 701 ............................................................................................... 3

17 U.S.C. § 702 ................................................................................... 1, 6, 17

35 U.S.C. § 2(b)(8)-(12). ................................................................................. 2

**Regulations:**

37 C.F.R. § 202.3. .................................................................. 6

37 C.F.R. § 202.3(b)(3) ......................................................... 17

37 C.F.R. § 202.3(b)(4) ........................................................... 6

37 C.F.R. § 202.3(b)(5) ........................................................... 6

72 Fed. Reg. 36,883 (July 6, 2007). ....................................... 17

76 Fed. Reg. 4,072 (Jan. 24, 2011). ................................. 17, 29

**Legislative Materials:**

H. Rep. No. 94-1476 (1975). .................................................. 19

H. Rep. No. 110-617 (2008). ............................................ 27, 30

**Other Authorities:**

Circular 62, "Copyright Registration for Single Serial Issues". .................. 8, 18, 29

Circular 62A, "Group Registration of Newspapers and Newsletters
on Form G/DN". ........................................................ 8, 18, 29

Circular 65, "Copyright Registration for Automated Databases". ............................ 9

Compendium of Copyright Office Practices II § 615.06. .............................. 7, 8, 18

Compendium of Copyright Office Practices II § 615.07(b)(3) ................................ 8

Library of Congress, Annual Report of the Librarian of Congress for the Fiscal
Year Ending September 30, 2007 (2008). ........................................... 20

U.S. Copyright Office, Annual Report of the Register of Copyrights, Fiscal Year
Ending September 30, 2007. .................................................... 20

U.S. Dep't of Justice, Progress Report of the Department of Justice's Task Force on Intellectual Property 33 (June 2006). .................................................................. 2

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

ALASKA STOCK, LLC,

Plaintiff-Appellant,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING CO.,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
HONORABLE H. RUSSEL HOLLAND
(CASE 3:09-CV-00061-HRH)
BRIEF FOR THE UNITED STATES OF AMERICA
AS AMICUS CURIAE IN SUPPORT OF REVERSAL

The United States respectfully submits this brief to present its views as

*amicus curiae* on the statutory issues presented in this case. The United States has

significant responsibilities related to the registration of creative works under the

Copyright Act. Congress has made the United States Copyright Office, headed by

the Register of Copyrights ("Register"), responsible for administering the

registration system and determining whether works meet the requirements for

registration. See 17 U.S.C. §§ 408-410, 702. The interpretation of the Copyright

Act is also of interest to the United States Patent and Trademark Office, which

advises the President and other agencies on matters of intellectual property policy,

see 35 U.S.C. § 2(b)(8)-(12), and which advocates the effective protection of
intellectual property.  Finally, because registration affects remedies for copyright
infringement, registration requirements are of interest to the Department of Justice.
See U.S. Dep't of Justice, Progress Report of the Department of Justice's Task
Force on Intellectual Property 33, 75 (June 2006).

## STATEMENT

A "collective work" is a copyrightable compilation made up of indepen-
dently copyrightable component works.  The copyrights in a collective work and
its component works are all eligible for registration through the Copyright Office.
The Copyright Office has long interpreted the Copyright Act to permit an
application to seek registration of a collective work and the component works that
the claimant owns, even if the application does not specify the authors and titles of
the component works.  This case involves whether that longstanding practice, and
the administrative construction of the Act on which it rests, are consistent with 17
U.S.C. § 409, and if not, whether collective work registration applications that
omit the authors and titles of component works are nonetheless legally effective
under 17 U.S.C. § 411(b)(1).

2

## I.    Statutory and Regulatory Framework

### A.  Copyright Registration Generally

The Copyright Act vests the author of any "work of authorship" with a copyright upon the work's creation and fixation in a tangible medium, without any application to the government.  17 U.S.C. § 102 ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression[.]"); id. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work."); id. § 408(a) ("[R]egistration is not a condition of copyright protection.").  A copyright claimant has the option to apply to register his copyright with the Register.  See 17 U.S.C. §§ 408-412, 701. The Register has statutory authority to examine registration applications and determine whether "the material deposited constitutes copyrightable subject matter and . . . the other legal and formal requirements of this title have been met."  17 U.S.C. § 410(a).  If so, the Register registers the claim and issues the claimant a certificate of registration.  See id.

Registration affords the copyright claimant benefits that mere copyright ownership alone does not.  A copyright claimant of a United States work generally may not sue for infringement until his copyright claim has been registered.  17 U.S.C. § 411(a); see generally Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237

(2010).  If a copyright is registered before infringement, or within three months of the first publication of the work, registration also allows the claimant to seek statutory damages and attorney's fees.  See 17 U.S.C. §§ 412, 504-505.  Finally, a certificate of registration with an effective date before or within five years of first publication constitutes prima facie evidence of copyright validity and the facts stated in the certificate of registration.  See 17 U.S.C. § 410(c).

In 2008, Congress amended the Copyright Act to provide that a certificate of registration satisfies the requirements of § 411, which requires registration of a United States work as a precondition to suit, and § 412, which provides statutory damages and attorney's fees only for post-registration infringement, "regardless of whether the certificate contains any inaccurate information," unless "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

### B.  Registration of Collective Works and Component Works

Compilations – including "collective works," which are compilations that include independently copyrightable materials – are afforded copyright protection, but this protection "extends only to the material contributed by the author of such

work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." See 17 U.S.C. §§ 101, 103, 201(c).[1]  However, if the author of a collective work is also the author of the component works, or if the authors of the component works transfer all rights in the works to him, the author of the collective work may claim a copyright in the component works that make up the collective work.  See 17 U.S.C. § 201(d).

This case concerns the ways in which a collective work claimant who also holds a copyright in the collective work's component works may register his copyrights in those component works.  The Copyright Act provides that "[t]he application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include" specified information, including "the name and nationality or domicile of the author" and "the title of the work."  17

---

[1]  The Copyright Act defines a "compilation" as a "work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.  Thus, the term "compilation" includes collections of data that are not in themselves copyrightable material, such as a list of stock prices for a certain day.  A "collective work," such as a newspaper, is a type of compilation that includes independently copyrightable component works.  See id.  Because the issue presented here involves only collective works – not compilations more generally – this brief refers only to "collective works."

U.S.C. § 409.  In addition to statutory authority to determine whether an application for registration meets the "legal and formal requirements" of Title 17, 17 U.S.C. § 410(a), the Copyright Act gives the Register specific authority to "specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration," and these "regulations may require or permit, for particular classes, . . . a single registration for a group of related works."  17 U.S.C. § 408(c); see also 17 U.S.C. § 702 (giving the Register general authority to "establish regulations not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under this title").

Pursuant to this statutory authority, the Register promulgated regulations governing registration requirements.  See 37 C.F.R. § 202.3.  The Copyright Office has defined certain groupings of independently copyrightable materials as "single works" for registration purposes.  See 37 C.F.R. § 202.3(b)(4).  These regulations also provide for specified ways to register various groups of related works, including groups of automated databases.  See 37 C.F.R. § 202.3(b)(5) ("Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for automated databases

and their updates or other derivative versions that are original works of authorship" under certain conditions.).

Although these regulations do not address whether any component works within an automated database are also registered when either a single database or a group of databases is registered, the Copyright Office has addressed this issue in guidance documents. In the Compendium of Copyright Office Practices II, a publicly available manual providing advice regarding registrations, and in Circulars providing advice to the public, the Copyright Office has consistently taken the position that the registration of a collective work also registers any independently copyrightable works within the collective work – referred to here as "component works" – in which the claimant owns all rights, even if the registration application does not specify the titles and authors of the component works.

The Compendium instructs that when registering a collective work, "the application should name the author of the collective work," but that "[t]he names of the individual authors of separate contributions being registered as part of the claim need not be given on the application." Compendium § 615.06; see also id. ("The registration [of a collective work] may cover (a) the collective work authorship, (b) any contribution created by the employee or other party

7

commissioned by the author of a work made for hire, and (c) any other

contributions that the claimant of the collective work obtained by transfer.").  The

Compendium also states that "[i]f the work being registered was created by a large

number of authors, the application will be considered acceptable if it names at

least three of those authors, followed by a statement such as 'and [number]

others.'"  Compendium § 615.07(b)(3).

In several Circulars, the Copyright Office has explained that registration of

various forms of collective works will also register independently copyrightable

works within the collective work that the copyright claimant owns.  See Record

Excerpts 58, Circular 62, "Copyright Registration for Single Serial Issues"

("When a serial issue includes independently authored contributions in which all

rights have been transferred in writing to the claimant of the entire serial issue, it

is not necessary to include the names of the contributors. Whether those

contributors are listed or not, the copyright claim in the serial issue as a whole

would extend to those contributions."); Circular 62A, "Group Registration of

Newspapers and Newsletters on Form G/DN," available at

http://www.copyright.gov/circs/circ62a.pdf (last visited Feb. 18, 2011)

8

(registration covers the "content of any contributions (for example, text or

photos)").[2]

## II. Proceedings Below

Appellant Alaska Stock, LLC, a stock photography company, acquired the

rights to the images at issue in this case by transfer.  See Record Excerpt ("RE") 6-

8.  Alaska Stock included the images in various automated databases, each

containing between 500 and 6,000 images authored by various photographers, and

filed applications to register the databases.   See RE 7-8.  As permitted by

Copyright Office guidance documents, Alaska Stock's registration applications

did not list the author's information and title of each image within the databases to

which the registration was intended to extend.  See RE 8.

Alaska Stock brought this action against Houghton Mifflin Harcourt

Publishing Company ("Houghton Mifflin"), alleging that Houghton Mifflin had

exceeded the limited licenses it held to reproduce Alaska Stock's photographs.

_____

[2] The Copyright Office previously published Circular 65, "Copyright
Registration for Automated Databases."  See RE 60.  This circular is currently
under revision.  In its previous incarnation, cited by appellant below, see D. Ct.
Docket # 59 Ex. 4, Circular 65 suggested that copyrightable component works
within the database would also be registered along with the database itself.  See
RE 63 (comparing claims in databases of previously published or registered
works, which must be limited to the compilation, with claims in databases with
copyrightable material being "published or registered for the first time," in which
case the "claim could also extend to 'text' . . . or the like").

9

See RE 275.  Houghton Mifflin moved to dismiss Alaska Stock's claims, arguing that Alaska Stock did not have valid copyright registrations for the photographs in question and therefore could not bring suit under 17 U.S.C. § 411(a), which makes registration a precondition for an infringement action.  See RE 160.  Houghton Mifflin asserted that the registrations on which Alaska Stock based its claims were invalid because the registrations did not identify the photographs' authors and titles.  RE 162-64.

The district court granted Houghton Mifflin's motion to dismiss.  See RE 6.  The court construed 17 U.S.C. § 409 to mean that only those works whose titles and authors are listed on the registration application are within the scope of the resultant registration.  See RE 10-11.  Since Alaska Stock's registration applications did not identify the authors and/or the titles of the component photographs, the court concluded that these component photographs were not within the scope of the registration.  See RE 11, 13-15.  The court also reasoned that Alaska Stock's – and the Copyright Office's – position that registration of a collective work can also register the copyrights held in underlying component works not authored by the current owner was precluded by 17 U.S.C. § 103, which provides that "[t]he copyright in a compilation . . . extends only to the material contributed by the author of such work, as distinguished from the preexisting

material employed in the work, and does not imply any exclusive right in the preexisting material." <u>RE</u> 11.  The court interpreted § 103 to mean that "a compilation of works <u>can</u> effect registration as to the individual works if the copyright claimant owns all of the copyrights <u>and</u> is also the author of the individual works in the compilation." <u>See id.</u> at 11-12 (emphasis in original).

The court rejected Alaska Stock's argument that § 411(b) saved its registrations, reasoning that this section was inapplicable because "there was no inaccuracy in plaintiff's registration applications," but rather "plaintiff's registration applications totally omitted" the titles and authors of the individual photographs.  RE12-13.  Section 408(c)(1), which provides that the Copyright Office may establishing regulations permitting "a single registration for a group of related works," was inapposite because such regulations "do not permit a copyright owner to ignore the requirements of Section 409 when applying for a registration for a group of related works."  RE 13.  The court dismissed Alaska Stock's suit for lack of a registration covering the allegedly infringed photographs.  RE 15.  The district court partially granted Alaska Stock's ensuing motion for reconsideration, amending its order to dismiss the case without prejudice, but denying Alaska Stock's request to amend its complaint after it had had a chance to

11

register the photographs in question in accordance with the district court's view of

17 U.S.C. § 409.  RE 2.  This appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in concluding that the Copyright Act, 17 U.S.C.

§ 409, requires a collective work claimant to list certain information on a registra-

tion application in order to also register independently copyrightable works within

the collective work fully owned – but not authored – by the claimant.  Far from

providing an unambiguous answer, the text of § 409 is in fact silent regarding the

application requirements for registering component works of a collective work.

For more than thirty years, since the Copyright Office started registering works

under the Copyright Act of 1976, the Copyright Office has interpreted § 409 to

permit claimants to register component works using the procedures appellant

followed here.   That longstanding administrative interpretation is reasonable, and

the district court should have deferred to it rather than adopting an interpretation

of § 409 that runs directly counter to it.

Moreover, even if the district court's interpretation of § 409 were correct,

appellant's registrations would remain effective by virtue of 17 U.S.C. § 411(b)

and the longstanding doctrine excusing innocent error in registration applications.

Section 411(b) provides that registrations containing "inaccurate information"

nonetheless satisfy the Copyright Act's requirements if the claimant did not know of the inaccuracies and the inaccuracies would not have caused the Register of Copyrights to refuse registration. Since appellant's registration application complied with the Copyright Office's long-held and explicit policies regarding component work registration, both these conditions are satisfied here.

## ARGUMENT

### I. The Copyright Office Has Permissibly Interpreted 17 U.S.C. § 409 Not To Require a Collective Work Registration Application to Identify the Author and Title of All Claimed Component Works.

A. Section 409 Is Ambiguous Regarding Component Work Registration.

The Copyright Act provides that "[t]he application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include," inter alia, "the name and nationality or domicile of the author or authors" and "the title of the work, together with any previous or alternative titles under which the work can be identified." 17 U.S.C. § 409(2), (6). The district court interpreted this language as an unambiguous statutory requirement that a collective work claimant must list the authors and titles of component works in his application in order to register the component works along with the collective work. See RE 10-11 (assuming that § 409 required registrants to name authors and title in order to cover component works).

13

The district court erred.  Section 409 does not contain unambiguous requirements regarding registration of component works.  Indeed, § 409 says nothing about how a copyright claimant must register component works.  It simply states that a registration application must include certain information.  The statute does not specify whether an application to register a collective work must include authors' information and titles for every component work sought to be covered by the registration, or whether listing the author's information and title of the collective work alone suffices.  Nor does the statute specify whether the registration of a collective work may cover independently copyrightable component works that the claimant owns, or address the scope of a registration at all.[3]  As to these issues, § 409 is silent.

Indeed, the district court's assumption that § 409 unambiguously requires claimants to list the titles and authors of every work intended to be covered by the registration is at odds with other portions of the Copyright Act.  See Bodine v.

---

[3]  The only reference § 409 makes to the registration of a compilation makes clear that Congress contemplated that copyrights in compilations could be registered, but does not address the application requirements for – or the scope of – such a registration.  Section 409(9) states that the "application . . . shall include . . . in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  17 U.S.C. § 409(9).

Graco, Inc., 533 F.3d 1145, 1151 (9th Cir. 2008) (the "meaning of statutory language, plain or not, depends on context" and courts must "construe statutes, not isolated provisions") (internal quotation marks omitted).  Section 408(c)(1) provides the Register with specific authority to promulgate regulations that "may require or permit . . . a single registration for a group of related works."  "Without prejudice to the general authority" in § 408(c)(1), § 408(c)(2)(B) requires the Register to establish regulations permitting a single registration for a specific type of group of related works (same authored contributions to periodicals within a twelve-month period), requiring that the application for such a registration "identif[y] each work separately, including the periodical containing it and its date of first publication."  17 U.S.C. § 408(c)(2)(B).  If Congress had intended the general registration requirements in § 409 to plainly require the disclosure of all titles and dates of first publication (if published) for all works being registered on a single application, see 17 U.S.C. § 409(6), (8), it would have been unnecessary to specify that the registration application in § 408(c)(2)(B) had to identify each work and its publication date separately.  Furthermore, § 408(c)(1) – which does not include the separate identification requirement found in § 408(c)(2) – evidences Congress's intent to give the Register the flexibility to create a group registration option.  Section 409 – enacted at the same time as § 408 – is

15

understandably silent regarding the application requirements for a group registration regime that had not yet been created.

   B.  This Court Should Defer to the Copyright Office's Interpretation of Section 409.

   Given that § 409 does not specify the scope of a collective work's registration, or explicitly require that every author and title for every work being registered must be listed in an application, the statute is silent as to "the precise question at issue" here, and thus ambiguous.  See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984); see also United States v. Haggar Apparel Co., 526 U.S. 380, 392-393 (1999) (statute may be "ambiguous in that the agency must use its discretion to determine how best to implement the policy in those cases not covered by the statute's specific terms").  When faced with such statutory ambiguity, this Court defers to the Copyright Office's reason-able interpretation of the statute.  See Batjac Productions Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223, 1230-1231 (9th Cir. 1998) (looking to the Compendium and stating that "'[t]he Register has the authority to interpret the copyright laws and [ ] its interpretations are entitled to judicial deference if reasonable'") (quoting Marascalco v. Fantasy, Inc., 953 F.2d 469, 473 (9th Cir.

16

1991)); see also Richlin v. Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962, 973 (9th Cir. 2008) (noting Batjac's deference to the Compendium).

The Copyright Office has consistently interpreted § 409 to permit claimants to register component works they own by registering the collective work, even if the collective work registration does not specify the titles and author's information for each component work.[4]  Consistent with § 409's plain language, the Copyright Office requires that every application to register a compilation copyright contain the title and author's information for the collective work.  The Copyright Office does not, however, require applicants to list the title and author's information for component works the applicant owns in full and also wishes to register.  See

---

[4]  The Copyright Office has broad discretion in administering copyright registration, see 17 U.S.C. §§ 409, 702, and it may require claimants to list more information on registration applications than the bare minimum required by § 409. For example, the Copyright Office intended to require additional information, including authors and titles, on continuation sheets "CON 1" and "CON 2" in connection with a beta test of a new application form – Form CO.  See 72 Fed. Reg. 36,883, 36,886 (July 6, 2007) (describing beta test of a new online registration system and a new Form CO to which these new continuation sheets were to be an "adjunct"); 37 C.F.R. § 202.3(b)(3).  Moreover, the Copyright Office has recently indicated that it may "initiate a review of the circumstances and conditions under which database registrations may be made and the extent to which, going forward, such registrations should continue to be deemed to cover not only the compilation authorship . . . but also any or all of the works assembled in the database."  Registration of Claims of Copyright, 76 Fed. Reg. 4072, 4073 (Jan. 24, 2011) (announcing a pilot program in which applications for group registration of photographic databases may be made online).

Compendium of Copyright Office Practices II § 615.06 (providing that collective

work "application[s] should name the author of the collective work," and that

"[t]he names of the individual authors of separate contributions being registered as

part of the claim need not be given on the application"); see also id. ("The

registration may cover (a) the collective work authorship, (b) any contribution

created by the employee or other party commissioned by the author of a work

made for hire, and (c) any other contributions that the claimant of the collective

work obtained by transfer."); id. § 615.07(b)(3) ("If the work being registered was

created by a large number of authors, the application will be considered acceptable

if it names at least three of those authors, followed by a statement such as 'and

[number] others.'").[5]

    The Copyright Office's decision to not require collective work claimants to

list information for every component work they own is reasonable in light of

---

[5] The Copyright Office's interpretation of the registration requirements for
collective works is also apparent from its circulars governing specific types of
collective works. See ER 58, Circular 62, "Copyright Registration for Single
Serial Issues" ("When a serial issue includes independently authored contributions
in which all rights have been transferred in writing to the claimant of the entire
serial issue, it is not necessary to include the names of the contributors. Whether
those contributors are listed or not, the copyright claim in the serial issue as a
whole would extend to those contributions."); Circular 62A, "Group Registration
of Newspapers and Newsletters on Form G/DN" (stating that the registration
covers the "content of any contributions (for example, text or photos)").

pragmatic concerns.  Many traditional forms of collective works, such newspapers

and magazines, can contain hundreds – if not thousands – of copyrightable works

that the claimant owns but did not author.  Listing all component works and their

authors could be so burdensome on applicants as to discourage registration.[6]

Moreover, at the time that Congress was drafting § 409 as part of the Copyright

Act of 1976, and until very recently, Copyright Office personnel had to manually

---

[6]  In drafting the Act, Congress  recognized the need to avoid burdensome
registration requirements by giving the Register the authority to allow group
registrations.  See 17 U.S.C. § 408(c).  The House Report to the Act notes that
there is a "principle of administrative flexibility underlying all of the deposit and
registration provisions," and states:

> The provision empowering the Register to allow a number of
> related works to be registered together as a group [under 17
> U.S.C. § 408] represents a needed and important liberalization
> of the law now in effect. At present the requirement for
> separate registrations where related works or parts of a work
> are published separately has created administrative problems
> and has resulted in unnecessary burdens and expenses on
> authors and other copyright owners. In a number of cases the
> technical necessity for separate applications and fees has
> caused copyright owners to forego copyright altogether.
> Examples of cases where these undesirable and unnecessary
> results could be avoided by allowing a single registration
> include the various editions or issues of a daily newspaper, a
> work published in serial installments, a group of related jewelry
> designs, a group of photographs by one photographer, a series
> of greeting cards related to each other in some way, or a group
> of poems by a single author.

H. Rep. No. 94-1476 at 154 (1975).

type in all the information received on a paper copyright application into the
Office's catalog of registered works. Entering hundreds of authors and titles of
component works for the many collective works registered would have imposed a
huge burden on the Copyright Office as well as on applicants, and would have
required higher application fees to defray processing costs.

Nor is the Copyright Office's decision not to require disclosure of the § 409
information for all component works contrary to the purposes of the registration
system. Providing information to the public is only one of such purposes.
Registration – and the accompanying deposit requirements – also serves as a
source of acquisitions for the Library of Congress. See 17 U.S.C. § 408(b); U.S.
Copyright Office, Annual Report of the Register of Copyrights, Fiscal Year
Ending September 30, 2007, at 13-14, 16; Library of Congress, Annual Report of
the Librarian of Congress for the Fiscal Year Ending September 30, 2007, at 25
(2008) ("Each year, the Copyright Office registers more than 500,000 claims and
transfers more than 1 million copyrighted works to the Library's collection
through the copyright deposit system."). The registration process also provides a
way to establish what the work was at the time of registration, thus facilitating the
adjudication of infringement claims. Had the Copyright Office imposed
burdensome requirements in order to enhance the public record, these other

20

purposes could have gone unfulfilled.  Thus, given the practical difficulties and

potential counterproductivity of requiring claimants to detail the component works

to which a collective work registration was intended to extend, the Copyright

Office's interpretation is reasonable.

Multiple courts have concluded that registration of a collective work also

registers component works for the purposes of 17 U.S.C. § 411(a).  See Xoom,

Inc. v. Imageline, Inc., 323 F.3d 279, 283-284 (4th Cir. 2003) (adopting the view

"that where an owner of a collective work also owns the copyright for a

constituent part of that work, registration of the collective work is sufficient to

permit an infringement action of the constituent part"), abrogated on other grounds

by Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010); Morris v. Business

Concepts, Inc., 259 F.3d 65, 68 (2d Cir. 2001) ("Under the law of this Circuit,

where the owner of a copyright for a collective work also owns the copyright for a

constituent part of that work, registration of the collective work is sufficient to

permit an infringement action under § 411(a) for the constituent part.")[7], abrogated

---

[7]  In response to a rehearing petition, the Second Circuit amended its opinion
in Morris.  See Morris v. Business Concepts, Inc., 283 F.3d 502, 505 (2d Cir.
2002).  The court did not strike the quoted portion of the opinion, and indeed, it
reaffirmed its understanding that registration of a collective work extended to
register "constituent works" that have been transferred to the claimant.  See id. at
505 ("[I]f all rights in a constituent work have not been transferred to the claimant,
a collective work registration will not apply to the constituent work. If, on the

on other grounds by Reed Elsevier; Idearc Media Corp. v. Northwest Directories, Inc., 623 F. Supp. 2d 1223, 1230 (D. Or. 2008) (adopting Morris's holding and stating that "[i]t would be absurd and inefficient to require the author of a larger work to individually register every possible smaller component of that work that qualified individually for copyright protection").

 Moreover, under the district court's assumptions about § 409's requirements, the titles of even those component works authored by the compilation claimant would have to be listed on the registration application, since § 409 does not make any distinctions between an application's need for titles and authors.  See 17 U.S.C. § 409(2), (6); cf. RE 11-12 (suggesting a difference in the status of title and author listings under § 409).  For example, in order to register a record album by a single artist, a claimant would thus have to list on the application every track on the album individually, a theory that courts have

---

other hand, all rights have been transferred to the claimant, then the constituent work is included in the registration of the collective work.").  To the extent that the Second Circuit suggested that § 409 requires a collective work's registration application to include the titles and authors of component works, this suggestion extended only to those situations in which the component work had not been entirely transferred to the collective work claimant.  See 259 F.3d at 71-72 (concluding that an exclusive licensee had the power to register component works, but noting that no such registration occurred where licensee had not listed component works on application).  Any other reading of Morris is at odds with the language quoted above.

previously rejected.  See, e.g., Szabo v. Errisson, 68 F.3d 940, 942-43 (5th Cir. 1995), abrogated on other grounds by Reed Elsevier.  Such a rule would be particularly anomalous when registering a group of photographs, since most photographs are not individually titled.  Similarly, in order to register even those articles within a newspaper written by the newspaper's employees (of which the newspaper publisher is deemed the author under 17 U.S.C. § 201(b)), a claimant would have to list on the application the headlines of each of the articles individually.

The district court's conclusion that 17 U.S.C. § 103 controls the scope of a compilation's registration is mistaken.  See RE 11-12.  Section 103 specifies that a compilation is copyrightable subject matter, and provides that a copyright in a compilation "extends only to the material contributed by the" compilation's author and "does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103.  The district court interpreted these provisions to "plainly state[] that a compilation of works can effect registration as to the individual works if the copyright claimant owns all of the copyrights and is also the author of the individual works in the compilation."  RE 11-12 (emphasis in original).

Section 103, however, says nothing about the registration of copyrights. Instead, as part of Chapter 1 within Title 17, governing "Subject Matter and Scope

23

of Copyright," § 103 addresses the *existence* of copyrights, not the *registration* of copyrights, a topic addressed in Chapter 4, "Copyright Notice, Deposit, and Registration." It is undisputed that – as § 103 provides – a collective work's author can create a copyrighted work by the selection and arrangement of other works, but could not acquire rights to another author's work by simply including it within a collective work. The question here, however, concerns what procedures a copyright claimant who owns the copyright in both a collective work and in some or all of the collective work's component works must comply with in order to register all the relevant copyrights. Chapter 1 does not address this question, or indeed, anything about the registration procedures.

## II.     Even If the District Court Correctly Construed § 409, Appellant's Registrations Are Effective Under § 411(b).

Even if § 409 requires a collective work claimant to list the authors and titles of all component works in order to register those works, the district court erred in concluding that the plaintiff's registration certificate as issued did not allow him to bring an infringement action. As noted above, the Copyright Act was amended in 2008 to provide:

> A certificate of registration satisfies the requirements of this section [which requires registration as a precondition to suit] and section 412 [which provides statutory damages and attorney's fees only for post-registration infringement],

24

<u>regardless of whether the certificate contains any inaccurate information</u>, unless --

> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1) (emphasis added).  Because Alaska Stock had a "certificate of registration" that covered its photographs under Copyright Office policies in effect when the certificate was issued, Alaska Stock satisfied the registration requirements of § 411(a) and § 412, even if its registration application was inaccurate insofar as it failed to list authors' information and titles for all the component works the registration was intended to cover.  Since Alaska Stock acted in accordance with Copyright Office policies when attempting to register unspecified component works via a collective work registration application, it could not have known that the provided information was inaccurate under the district court's newly announced construction of § 409, and certainly any such inaccuracies would not have caused the Register to refuse registration, since those inaccuracies were the direct result of the Copyright Office's guidance.

The district court rejected Alaska Stock's invocation of § 411(b), stating that with respect to the component works, Alaska Stock's registration was not merely "inaccurate" withing the meaning of the statute, because the registration "totally omitted the names of most of the authors of the works making up each registered compilation" and "provided no title for any of the individual works contained in any of the compilations." RE 12-13. The district court reasoned that Alaska Stock was "conflat[ing] the term 'inaccurate' with another concept: 'incomplete' – that is, the omission of known information." RE 12.

The district court's interpretation of "inaccurate," however, is needlessly narrow. Omission of information is one kind of inaccuracy, and an unknowing error of any sort is immaterial if its discovery would not have led the Copyright Office to refuse the application. See St. Luke's Cataract and Laser Institute, P.A. v. Sanderson, 573 F.3d 1186, 1201 (11th Cir. 2009) (discussing § 411(b) and noting that "[o]missions or misrepresentations in a copyright application can render the registration invalid where there has been intentional or purposeful concealment of relevant information,'" that "there must be a showing of 'scienter' in order to invalidate a copyright registration," and that "an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application"); see also S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir.

26

1989) (applying judge-made rule in effect before § 411(b)'s enactment that

"[a]bsent intent to defraud and prejudice, inaccuracies in copyright registration do

not bar actions for infringement" and refusing to invalidate copyright registration

where claimant had omitted author of an underlying work).  Especially in light of

indications in the legislative history that Congress intended good faith

registrations to satisfy the statutory registration requirements so long as the

Register considered registration appropriate, this Court should construe § 411(b)

to encompass the sort of application errors Houghton Mifflin contends that Alaska

Stock made here.  <u>See</u> H. Rep. No. 110-617 at 24 (2008) ("[T]he Act makes clear

that a registration containing inaccuracies will satisfy the registration requirements

of the Copyright Act unless the mistake was knowingly made and the inaccuracy,

if known, would have caused the Register of Copyrights to refuse the

registration.").[8]

---

[8]  Even before the enactment of § 411(b), courts had long held that innocent errors in registration applications, including omissions, did not affect the validity of the resulting registration.  <u>See, e.g.</u>, <u>Urantia Foundation v. Maaherra</u>, 114 F.3d 955, 963 (9th Cir. 1997) ("The case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."); <u>Data Gen. Corp. v. Grumman Sys. Support Corp.</u>, 36 F.3d 1147, 1161 (1st Cir.1994), <u>abrogated on other grounds by</u> <u>Reed Elsevier</u> ("It is well established that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration. . . . In general, an

Reading § 411(b) thus is entirely consistent with § 409.  The plain language of § 411(b) instructs courts to save inaccurate registrations.  Consistent with Congress's intention that such flawed registrations be deemed satisfactory for the purposes of § 411 and § 412 if they were made in good faith and in conformance with Copyright Office standards, this reading would only save those registrations that the Copyright Office would have registered under extant – if mistaken – Copyright Office guidance in effect at the time of the application.  Moreover, inaccuracies in, or omissions of, registration information required by § 409 still carry consequences, even if § 411(b) renders an imperfect registration effective for the purposes of § 411(a) and § 412.  Such an imperfect registration would not grant the claimant the benefit of the statutory presumption of validity described in 17 U.S.C. § 410(c).

---

error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application."); Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 828 (11th Cir. 1982) (noting that "omissions or misrepresentations in a copyright application can render the registration invalid" only where there has been "intentional or purposeful concealment of relevant information").   The registrations here are entitled to be given effect under these decisions, because even if § 409(2) and § 409(6) are deemed to require information about the works that the claimant failed to provide, the omissions were indisputably non-fraudulent, did not prejudice the appellee, and would not have caused the Copyright Office to reject the registrations.  Nothing in the legislative history of § 411(b) suggests that Congress wished to invalidate registrations that would otherwise pass muster under the pre-existing case law.

Failing to apply § 411(b) to registrations such as those at issue in this case would have a devastating effect on millions of registrations acquired in compliance with Copyright Office policies. See 76 Fed. Reg. 4,072, 4,073 (noting that registration of automated databases to register component photographs within the database has been occurring "since at least 1997"). There is no question that the underlying component works here are copyrightable subject matter, or that had the copyright holders been on notice of the district court's interpretation, they could have registered their copyrights in the component works by listing those works individually on their registration applications.[9] The district court's reasoning would allow infringers to unjustly benefit because of copyright claimants' compliance with longstanding Copyright Office policies. Moreover, the effects of the district court's reasoning would not be confined to registrations of works within automated databases, since the district court's reading of § 409 would apply equally to the Copyright Office's policies permitting registration of more traditional forms of collective works – such as newspapers and magazines – to also register component works the claimant owns. See Circulars 62, 62a. Such

---

[9] Although copyright claimants with invalidated registrations could seek to register their component works anew, such delayed registration could deprive the claimants of important benefits of registration, such as the right to recover statutory damages and attorney's fees for any infringement that commenced before registration. See 17 U.S.C. § 412.

29

widespread disruption of millions of copyrights that good faith registrants – and

the Copyright Office – believed valid would allow "intellectual property thieves"

to "exploit[]" a "loophole" created by mistakes in the application process, contrary

to Congress's intent in enacting § 411(b).  H. Rep. No. 110-617 at 24 (2008).


## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's

order and remand the case for further proceedings.


Respectfully submitted,

Of Counsel:                               TONY WEST
                                           Assistant Attorney General

DAVID CARSON
 General Counsel                          SCOTT MCINTOSH
ROBERT KASUNIC                             (202) 514-4052
 Deputy General Counsel                   /s/ Melissa N. Patterson
U.S. COPYRIGHT OFFICE                     MELISSA N. PATTERSON
                                           (202) 514-1201
                                           Attorneys, Appellate Staff
                                           Civil Division, Room 7230
                                           Department of Justice
                                           950 Pennsylvania Avenue, N.W.
                                           Washington, D.C.  20530-0001

FEBRUARY 2011

# CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing Brief for the United States of America as Amicus Curiae satisfies the requirements of Federal Rules of Appellate Procedure 32(a)(7) and 29(d) and Ninth Circuit Rule 32-1. The brief was prepared in Times New Roman 14-point, proportionally spaced font, and contains 6,774 words.

/s/ Melissa N. Patterson
Melissa N. Patterson
Counsel for the United States
Melissa.Patterson@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2011, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  The following participants in the case who are registered CM/ECF users will be served by the CM/ECF system:

Christopher Seidman
Harmon & Seidman LCC
101 S Third Street
Suite 265
Grand Junction, CO 81501
chris@harmonseidman.com

James Russell Jackson
Skadden, Arps, Slate, Meagher & Flom LLP
42-416
Four Times Square
New York, NY 10036
russell.jackson@skadden.com

Maurice James Harmon
Harmon & Seidman LLC
533 Walnut Drive
The Pennsville School
Northampton, PA 18067

Daniel C. Kent
BIRCH, HORTON, BITTNER & CHEROT
1127 West 7th Avenue
Anchorage, AK 99501
dkent@bhb.com

I further certify that some of the participants in the case are not registered

CM/ECF users.  I have mailed the foregoing document, via first-class mail,

postage prepaid, to the following individual:

Brent R. Cole
Marston & Cole PC
821 N Street
Suite 208
Anchorage, AK 99501

Craig F. Wallace
Harmon & Seidman LCC
101 S Third Street
Suite 265
Grand Junction, CO 81501

/s/ Melissa N. Patterson
Melissa N. Patterson
Civil Division, Appellate Staff
U.S. Department of Justice
950 Pennsylvania Ave., NW, Room 7230
Washington, DC 20530
(202) 514-1201
Melissa.Patterson@usdoj.gov