UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PANORAMIC STOCK IMAGES, LTD. d/b/a )
PANORAMIC IMAGES, )
) 12 C 10003
Plaintiff, )
) Judge Feinerman
vs. )
)
JOHN WILEY & SONS, INC., )
)
Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Panoramic Stock Images, Ltd., brought this suit against John Wiley & Sons, Inc., alleging direct and contributory infringement under the Copyright Act, 17 U.S.C. § 501 *et seq.*, and common law fraud. Doc. 1. Before the court is Wiley's partial motion to dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). Doc. 9. The motion is denied.

## **Background**

In considering Wiley's Rule 12(b)(6) motion, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Panoramic's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). To the extent an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "When ruling on a

motion to dismiss for improper venue [under Rule 12(b)(3)], the district court is not obligated to limit its consideration to the pleadings or to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (internal quotation marks omitted); *see also Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

The following sets forth the facts as favorably to Panoramic as permitted by the complaint and other materials that must be considered on a Rule 12(b)(6) motion. The facts that may be considered on a Rule 12(b)(3) motion but not a Rule 12(b)(6) motion will not be considered in evaluating Wiley's Rule 12(b)(6) motion.

### A. Panoramic's Allegations

Panoramic is a stock photography licensing agency that licenses photographs to publishers, including Wiley. Doc. 1 at ¶ 1. Wiley publishes and sells textbooks in the United States and overseas. *Id*. at ¶ 2. Panoramic owns the twenty photographic images ("Photographs") at issue in this case; they are listed in Exhibit 1 to the complaint. *Id*. at ¶ 5; Doc. 1-1. The Photographs either have been registered with the United States Copyright Office or are the subject of complete applications for copyright registrations received by the Copyright Office. Doc. 1 at ¶ 6; Doc. 1-1.

Between 1992 and 2010, in response to requests from Wiley, Panoramic and/or its agents sold Wiley limited licenses to use copies of the Photographs in educational publications. Doc. 1 at ¶ 7. The licenses were expressly limited with reference to number of copies, distribution area, language, duration, and/or media (print or electronic). *Ibid*. Panoramic granted the limited use licenses in response to Wiley's representations that its use of the Photographs would not exceed the limitations contained in the license requests. *Id*. at ¶ 8.

At the time Wiley represented to Panoramic that it needed specific, limited licenses to use the Photographs, Wiley often knew that its actual uses would exceed the usage rights it was requesting and paying for.  *Id*. at ¶ 9.  Wiley intended by its misrepresentations to obtain access to the Photographs at a lower cost than it otherwise would have paid.  *Id*. at ¶ 10.  Wiley exceeded the uses of the Photographs allowed by the terms of the licenses, and it used the Photographs without any license or permission in additional publications.  *Id*. at ¶¶ 11-12.

For example, in July 2001, Wiley sent a request letter to Panoramic's Chicago office seeking permission to print 15,000 copies of several of the Photographs in the textbook, *Physical Geography, Science and Systems of the Human Environment* Second Edition by Strahler ("*Science* 2/e"), for distribution in North America only.  *Id*. at ¶ 13.  Based on Wiley's representation that it would use the Photographs in the specified amount and geographic area, Panoramic issued a license permitting 15,000 copies of the Photographs to be distributed within North America.  *Ibid*.; Doc. 1-2.  Despite those limits, Wiley printed over 28,000 copies of *Science* 2/e.  Doc. 1 at ¶ 14; Doc. 1-3.  Wiley also printed copies of the Photographs in an international edition of the textbook that it distributed overseas.  Doc. 1 at ¶ 14; Doc. 1-4.  At the time Wiley secured the license, it knew its uses would exceed 15,000 copies and that it would distribute the Photographs in additional territories outside of North America.  Doc. 1 at ¶ 15.  Wiley intentionally misrepresented the number of reproductions and areas of distribution for *Science* 2/e, intending that Panoramic would rely upon those misrepresentations to its detriment by charging a lower fee than it otherwise would have charged.  *Ibid*.

Wiley also reproduced and distributed the Photographs without Panoramic's permission to other entities, subsidiary companies, divisions, affiliates, and/or third parties (collectively, "Third Parties") in the United States.  *Id*. at ¶ 23.  The Third Parties then translated the

publications at issue into different languages or published them in local adaptations or reprints, and included the Photographs in those publications without Panoramic's permission. *Id*. at ¶ 24. By transmitting the Photographs to the Third Parties, Wiley facilitated the Third Parties' unauthorized reproduction and distribution of the Photographs. *Ibid*. Wiley permitted the Third Parties to distribute Wiley's publications containing the Photographs in new territories, to translate its publications into new languages, and to adapt its publications for distribution in additional territories. *Id*. at ¶ 25. Wiley knew when it reproduced and distributed the Photographs that the Third Parties would reproduce and distribute the Photographs without Panoramic's authorization, and it was aware that the Third Parties in fact did so. *Id*. at ¶¶ 26-27. Wiley profited from its transmission of the Photographs to the Third Parties because the Third Parties paid Wiley for translation and distribution rights, including access to all of the content in its publications. *Id*. at ¶ 28.

### B. The Getty-Wiley Master License Agreements

Nine of the Photographs (Nos. 10, 12-14, 16-20) were "licensed by" Getty Images (US) Inc. to Wiley pursuant to a series of master license agreements. Doc. 1-1. Those Photographs will be referred to as the "Getty Images." On May 1, 2006, Wiley and Getty entered into a Getty Images' Master License Agreement ("2006 Agreement"). Doc. 9-1 at ¶ 2. On June 30, 2010, Getty and Wiley entered into another Getty Images' Master License Agreement ("2010 Agreement"). *Id*. at ¶ 4. The 2010 Agreement was amended by a writing dated December 6, 2011 ("2011 Amendment"). *Id*. at ¶ 5. The 2011 Amendment was superceded by an amendment dated May 1, 2012 ("2012 Amendment"). *Id*. at ¶¶ 5-6.

The 2006 Agreement and 2010 Agreement each has an arbitration clause. Under the heading "<u>Governing Law</u>", the 2006 Agreement states:

> This Agreement will be governed in all respects by the laws of the State of New York, U.S.A., without reference to its laws relating to conflict of laws. Any disputes arising from this Agreement or its enforceability shall be settled by binding arbitration to be held in either Seattle, Washington; New York, New York; London, England; Paris, France; or Singapore.… Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against Licensee in the event that, in the opinion of Getty Images, such action is necessary or desirable.

Doc. 9-2 at 6, ¶ 13.2. Under the heading "<u>Governing Law</u>", the 2010 Agreement states:

> This Agreement will be governed in all respects by the laws of the State of New York, U.S.A., without reference to its laws relating to conflicts of law. Any disputes arising from this agreement or its enforceability shall be adjudicated in the state and federal courts located in New York City, New York.… Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against Licensee in the event that, in the opinion of Getty Images, such action is necessary or desirable.

Doc. 9-3 at 6, ¶ 8.5. From 2001 through May 1, 2006, the master agreements between Getty and Wiley did not include arbitration clauses. Doc. 9-1 at ¶ 7.

    **C.**    **Panoramic's Compilation Copyright Registrations**

Six of the Photographs (Nos. 2, 4, 5, 6, 12, 13, and 18) were registered by Panoramic with the Copyright Office as part of photographic compilations. Doc. 1-1; *see also* Doc. 9-5. Photograph Nos. 2, 12, 13, and 18 are included in the compilation with the registration number "VA 841-131." Doc. 1-1. The registration form for VA 841-131 lists the copyright claimant as Panoramic, and the authors of the images as "David Lawrence, Mark Segal, Joseph Jacobson, et al." along with "Panoramic Images." Doc. 9-5 at 2. Photograph No. 4 is included in the compilation with the registration number "VA 957-800." Doc. 1-1. The registration form for VA 957-800 lists the copyright claimant as Panoramic, and the authors of the images as "James

Schwabel, Mark Segal, Richard Sisk & 21 others" along with "Panoramic Images."  Doc. 9-5 at 3.  Photograph Nos. 5 and 6 are included in the compilation with the registration number VA 1-002-221.  Doc. 1-1.  The registration form for VA 1-002-221 lists the copyright claimant as Panoramic, and the authors of the images as "Mark Segal, James Schwabel, David Brown & 125 others" along with "Panoramic Images."  Doc. 9-5 at 4.

## Discussion

Wiley's partial motion to dismiss makes three arguments, which are addressed in turn.

**I. Whether Panoramic's Claims Regarding The Getty Images Must Be Submitted To Arbitration Pursuant To The Getty-Wiley Master License Agreements**

Wiley contends that Panoramic's claims concerning all but one of the Getty Images should be dismissed under Rule 12(b)(3) because the Getty-Wiley Master License Agreements require that those claims be submitted to arbitration.  Doc. 9 at 2-3, n.3.  Photograph Nos. 12-14 and 16-19 were licensed from Getty to Wiley following the 2006 Agreement's effective date and prior to the 2010 Agreement's effective date.  Doc. 1-1; Doc. 9-2 at 2; Doc. 9-3 at 2.  Photograph No. 20 was licensed from Getty to Wiley following the 2010 Agreement's effective date.  Doc. 1-1; Doc. 9-3 at 2.  (The other Getty Image, Photograph No. 10, "is subject to an earlier Getty-Wiley master agreement that does not contain an arbitration clause."  Doc. 9 at 3 n.3.)

Before proceeding, the court notes that Rule 12(b)(3) is not the appropriate vehicle, and dismissal is not the appropriate means, to enforce an arbitration clause.  In this Circuit, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."  *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (internal quotation marks omitted).  And the authority to stay arbitration derives not from Rule 12(b), but from § 3 of the Federal Arbitration Act, 9 U.S.C. § 3.

*See Cont'l Cas. Co.*, 417 F.3d at 732 n.7. So the court will treat Panoramic's motion to dismiss as a motion to stay the Getty Images claims pending arbitration.

Panoramic concedes by its silence the Getty-Wiley Agreements govern this suit; this presumably is because Panoramic's rights to the Getty Images depend on those Agreements. Nor does Panoramic dispute that the Agreements' arbitration clauses are valid and enforceable. *See* 9 U.S.C. § 2; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010); *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005). That said, Panoramic argues that the Getty-Wiley Agreements' arbitration clauses expressly permit it to litigate in court claims regarding the Getty Images. Doc. 21 at 6-7. If that is correct, then those claims need not be arbitrated. *See Granite Rock*, 130 S. Ct. at 2857 (cautioning that arbitration is appropriate for "*only those disputes* … that the parties have agreed to submit to arbitration") (internal quotation marks omitted); *see also Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008) ("Although the Federal Arbitration Act favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration.") (internal quotation marks omitted).

Immediately following the language requiring that "[a]ny disputes arising from this Agreement or its enforceability shall be settled by binding arbitration," the 2006 Getty-Wiley Agreement's arbitration clause states: "Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against Licensee in the event that, in the opinion of Getty Images, such action is necessary or desirable." Doc. 9-2 at 6, ¶ 13.2. This language, which also appears in the 2010 Getty-Wiley Agreement's arbitration clause, Doc. 9-3 at 6, ¶ 8.5, creates a carve-out allowing Getty to opt out of arbitration in favor of litigation. *See*

*Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 365 (5th Cir. 2006) (holding that a sentence beginning with "[n]otwithstanding the foregoing" creates "an exception" to the contract's prior provisions); *RTC Mortg. Trust 1994-N2 v. Haith*, 133 F.3d 574, 576 (8th Cir. 1998) (same); *Heller Fin., Inc. v. Lee*, 2002 WL 1888591, at *4 (N.D. Ill. Aug. 16, 2002) (same). Although the carve-out language references Getty, Panoramic argues that "[i]f Panoramic is to stand in Getty's shoes, it is also entitled to exercise its right to litigate claims in court, as contemplated by the explicit language of these provisions." Doc. 21 at 7.

Wiley's reply brief makes no attempt to address, let alone refute, Panoramic's submission regarding the scope and effect of the arbitration carve-outs. That failure operates as a forfeiture of Wiley's attempt to compel arbitration of the claims arising from the Getty Images. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407-08 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to [the defendant's] motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008). Panoramic's carve-out argument is correct in any event. The carve-out on its face allows Getty to litigate rather than arbitrate its claims, Panoramic has stepped into Getty's shoes for purposes of the Getty Images, arbitration carve-outs are permitted as a general rule, and no basis for invalidating the carve-outs in this case are apparent from the record developed thus far. *See Navistar Int'l Corp. v. Fernandez*, 2011 WL 10305370, at *22 (Ill. App. Aug. 23, 2011) (recognizing the validity of a carve-out from an arbitration clause); *Williams v. TCF Nat'l Bank*, 2013 WL 708123, at *11-12 (N.D. Ill. Feb. 26, 2013) (same).

## II. Whether Panoramic Can Bring Copyright Claims Regarding The Photographs Subject To Pending Copyright Registrations

Wiley next argues that copyright claims arising from Photograph Nos. 1, 7-8, 11, 14-17, and 19 should be dismissed because those images are the subject of copyright applications pending before the Copyright Office, as opposed to actual copyright registrations. Doc. 1-1 at 2-4 (listing the registration for these images as "pending"). Section 411(a) of the Copyright Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Section 411(a) "does not implicate the subject-matter jurisdiction of federal courts." *Reed Elsevier v. Muchnick*, 559 U.S. 154, 169 (2010); *see also Johnson v. Cypress Hill*, 641 F.3d 867, 873 (7th Cir. 2011) (same). However, "[c]ompliance with the registration requirements of 17 U.S.C. § 411(a) is … a prerequisite to suing for infringement," and failure to comply with § 411(a) warrants dismissal of a copyright claim under Rule 12(b)(6). *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009); *see also Reed Elsevier,* 559 U.S. at 157 ("Section 411(a)'s registration requirement is a precondition to filing a claim").

The circuits are split as to whether "preregistration or registration" for purposes of § 411(a) is complete when a copyright application is made (the "application approach"), or only after the Copyright Office has acted on the application (the "registration approach"). *Compare Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615-21 (9th Cir. 2010) (application approach); *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1013 (8th Cir. 2006) (same); *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365 (5th Cir. 2004) (same), *abrogated in part by Reed Elsevier*, 559 U.S. 154, *with La Resolana Architects, PA v. Clay*

*Realtors Angel Fire*, 416 F.3d 1195, 1201 (10th Cir. 2005) (registration approach), *abrogated in part by Reed Elsevier*, 559 U.S. 154; *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir. 1990) (same), *abrogated in part by Reed Elsevier*, 559 U.S. 154.

The Seventh Circuit has not definitively resolved the issue, and the tea leaves are difficult to read. In *Chicago Board of Education v. Substance, Inc.*, 354 F.3d 624 (7th Cir. 2003), the court stated that "[a]lthough a copyright no longer need be registered with the Copyright Office to be valid, an application for registration *must be filed* before the copyright can be sued upon." *Id*. at 631 (emphasis supplied). Several district judges have read *Substance* as having endorsed the application approach. *See Panoramic Stock Images, Ltd. v. McGraw-Hill Cos., Inc.*, __ F. Supp. 2d __, 2013 WL 4047651, at *7 (N.D. Ill. Aug. 9, 2013); *Panoramic Stock Images, Ltd. v. Pearson Educ., Inc.*, 2013 WL 2357586, at *2 (N.D. Ill. May 29, 2013); *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 844-45 (N.D. Ill. 2013); *Hard Drive Prods., Inc. v. Does 1-55*, 2011 WL 4889094, at *n.2 (N.D. Ill. Oct. 12, 2011) ("Although the Seventh Circuit has not expressly ruled on this issue, this Circuit appears to follow the application approach.") (citing *Substance*); *Woollen, Molzan & Partners, Inc. v. Indianapolis-Marion Cnty. Pub. Library*, 2006 WL 2135819, at *2 (S.D. Ind. July 28, 2006); *see also Cosmetic Ideas*, 606 F.3d at 615 (citing *Substance* for the proposition that the Seventh Circuit "ha[s] adopted the application approach"). A year after issuing *Substance*, the Seventh Circuit issued *Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004), which states: "The significance of registration is that it is a prerequisite to a suit to enforce a copyright. More precisely, an application to register must be filed, and either granted or refused, before suit can be brought." *Id*. at 654-55. At least two district court decisions have cited *Gaiman* in dismissing copyright claims under the registration approach. *See TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*, 2012 WL 394229, at *4 (N.D. Ill.

Feb. 1, 2012) ("The mere filing of an application for copyright registration does not satisfy the statutory requirement that a copyright must be registered prior to the initiation of an infringement action."); *Furstperson, Inc. v. Iscopia Software, Inc.*, 2009 WL 2949777, at *3 (N.D. Ill. Sept. 10, 2009) ("We conclude that the mere application for a copyright registration is not sufficient to support a copyright infringement claim.").

Five years after *Gaiman*, in *Brooks-Ngwenya*, the Seventh Circuit acknowledged the circuit split and found it unnecessary under the circumstances to take sides. 564 F.3d at 806 ("The circuits have split over whether registration is complete when an application is made or only after the Copyright Office has acted on the application."). In so doing, the Seventh Circuit did not acknowledge *Gaiman* and gave a "cf." cite to *Substance*, quoting that decision as having said that "an application for registration *must be filed* before the copyright can be sued upon." *Ibid*. (quoting *Substance*, 354 F.3d at 631) (emphasis added). And earlier this month, in *Neri v. Monroe*, __ F.3d __, 2013 WL 4046638 (7th Cir. Aug. 12, 2013), the Seventh Circuit stated that "litigation to enforce a copyright is permissible only after it has been registered." *Id*. at *1. *Neri* did not present the application vs. registration issue raised here, and there is no indication that *Neri* intended to commit the Seventh Circuit to the registration approach.

In the absence of controlling authority from the Seventh Circuit, the court is persuaded that the application approach is correct. As one court explained:

> [T]he application approach avoids unnecessary delay in copyright infringement litigation, which could permit an infringing party to continue to profit from its wrongful acts. Section 411(a) allows a party, after applying for registration, to litigate the claim whether the Copyright Office accepts or rejects the registration. Under the registration approach, however, a party must wait on the Copyright Office's affirmative acceptance or rejection, despite knowing that suit can proceed in either event. As the leading treatise on copyright explains, the registration approach thus creates a strange scheme: "[G]iven that the claimant … will

> ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred." *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a][i] (2008). The application approach avoids this legal limbo—and avoids prolonging the period of infringement—by allowing a litigant to proceed with an infringement suit as soon as he has taken all of the necessary steps to register the copyright at issue.

*Cosmetic Ideas*, 606 F.3d at 619-20 (some internal citations omitted); *see also Goss Int'l Americas, Inc. v. A-Am. Mach. & Assembly Co.*, 2007 WL 4294744, at *3 (N.D. Ill. Nov. 30, 2007) ("Additionally, the statute allows a party to sue for infringement not only after approval of a copyright registration application, but also after a refusal of that registration application. It hardly seems fair, then, to refuse plaintiff the opportunity to sue for infringement until the Copyright Office takes some action when plaintiff will be able to sue after that determination, regardless of the outcome.") (internal citation omitted).

This court agrees with this analysis and accordingly adopts the application approach. Having adopted that approach, the court denies Wiley's motion to dismiss claims involving Photographs that are the subject of pending copyright registration applications.

### III. Whether Panoramic Can Bring Copyright Claims Regarding The Photographs Included In Compilation Copyright Registrations

Finally, Wiley argues that copyright claims arising from Photograph Nos. 2, 4, 5, 6, 12, 13, and 18 should be dismissed because those images are registered as part of compilations and not individually. According to Wiley, because the compilation registrations do not specifically identify the author and title of each underlying image, they fail to satisfy 17 U.S.C. § 409(2) and (6), which mandate that a copyright application "shall include" the "name and nationality or domicile of the author or authors" and "the title of the work." From this premise, Wiley contends that the above-referenced Photographs do not satisfy § 411(a)'s registration

prerequisite for bringing a copyright suit. Doc. 9 at 9-11. Panoramic disagrees, arguing that § 409 "does not require detailed information as to the underlying discrete works in order for a copyright registration to extend to those separate and previously created images." Doc. 21 at 9.

The Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Because a compilation may include material that does not belong to the copyright applicant, "[t]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). That proviso has limited relevance here, as the complaint alleges that Panoramic owns the component parts of the compilations at issue in this case. Doc. 1 at ¶ 5. The three compilation registrations at issue do not list the titles of the underlying images, and each registration lists as authors only three individual photographers, followed by either "et al.," "& 21 others," or "& 125 others." Doc. 9-5.

The courts have split on whether compilation registrations are sufficient to allow the copyright holder to sue for infringement of the compilation's individual components. At the time briefing concluded on this motion, only district courts had spoken to the issue. Some district courts had held that such registrations are insufficient. *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 94 (S.D.N.Y. 2010) (granting the defendant's motion to dismiss because "[a] plain reading of § 409 of the Copyright Act mandates that the copyright registrations at issue here contain the names of all the authors of the work."), *reconsideration denied in relevant part*, 2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010); *Alaska*

*Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2010 WL 3785720, at *4 (D. Alaska Sept. 21, 2010) ("The court concludes that plaintiff's registrations of its compilations of photographs did not effect the registration of the copyrights in the individual photographs. Because plaintiff did not register the copyrights in the individual images, it cannot maintain an action for the infringement of those images."), *on appeal*, No. 10-36010 (9th Cir.); *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, 2010 WL 3168624, at *3-4 (D. Ariz. Aug. 10, 2010) ("Corbis's six compilation registrations, although valid for purposes of copyrighting the compilations themselves, did not copyright the individual photographs within the compilations. As a result, none of the 150 images at issue in this case is properly registered under the Copyright Act."). Other district courts had reached the opposite conclusion. *See Panoramic Stock Images*, 2013 WL 4047651, at *7 (denying a motion to dismiss as to "the photographs whose author or title are unlisted in the relevant registrations"); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 705 (D. Md. 2012) ("an owner and registrant of a compilation may bring an infringement action on the underlying parts where it also owns copyrights in the underlying parts, even where those parts have not been individually registered"); *Masterfile Corp. v. Gale*, 2011 WL 4702862, at *2 (D. Utah Oct. 4, 2011) ("Because Masterfile owns the constituent parts of the collection the registration of the collection extends copyright protection to the constituent parts."). And the United States, as *amicus curiae*, had taken the position, consistent with guidance documents promulgated by the Copyright Office, that a compilation registration is sufficient. *See* Brief for the United States of America as Amicus Curiae in Support of Reversal, *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, Appeal No. 10-36010 (9th Cir.) (reproduced at Doc. 21 at 18-55).

After briefing concluded on the present motion, the Fourth Circuit affirmed the district court's judgment in *Metropolitan Regional Information Systems*, ruling that where, as here, the copyright holder of a registered compilation owns the components at issue in a copyright suit, the registration suffices to permit the suit. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, __ F.3d __, 2013 WL 3722365, at *6-7 (4th Cir. July 17, 2013). Because this case remains at the pleading stage, because allowing Panoramic's copyright claims arising from Photograph Nos. 2, 4, 5, 6, 12, 13, and 18 will not appreciably (if at all) increase the discovery burden given that those images also are subject to the common law fraud claim, because the only court of appeals to have addressed the matter has held that compilation registrations are sufficient to authorize suit in this context, and because the contrary decision in *Alaska Stock* remains on appeal in the Ninth Circuit, the more prudent course is to allow those claims to proceed, at least for now. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) (where the Seventh Circuit noted "that creating a circuit split generally requires quite solid justification" and that "we do not lightly conclude that our sister circuits are wrong."). Wiley should feel free to renew its argument later in the case, particularly if one or more appeals courts depart from the view adopted by the Fourth Circuit.

## Conclusion

For the foregoing reasons, Wiley's partial motion to dismiss is denied. Wiley shall answer the complaint by September 18, 2013.

August 28, 2013

_____
United States District Judge