**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PANORAMIC STOCK IMAGES, LTD., d/b/a PANORAMIC IMAGES,<br><br>        Plaintiff,<br><br>   v.<br><br>JOHN WILEY & SONS, INC.<br><br>        Defendant. | CASE NO. 1:12-cv-10003<br><br>Hon. Judge Gary Feinerman<br>Magistrate Judge Daniel G. Martin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION
TO PLAINTIFF PANORAMIC STOCK IMAGES, LTD.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Christopher P. Beall
Julie B. Ehrlich
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 510
New York, NY 10036
(T): (212) 850-6100
(F): (212) 850-6299
cbeall@lskslaw.com
jehrlich@lskslaw.com

William McGrath
Kevin A. Thompson
Davis McGrath LLC
125 South Wacker Drive
Chicago, Illinois 60606
(T): (312) 332-3033
(F): (312) 332-6376
wmcgrath@davismcgrath.com
kthompson@davismcgrath.com

*Attorneys for Defendant
John Wiley & Sons, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

SUMMARY OF FACTUAL BACKGROUND ........................................................................ 2

ARGUMENT ............................................................................................................................. 2

I. Certain of Plaintiff's Photos Are Not Adequately Registered ............................................ 2

II. The Copyright Act's Three-Year Statute of Limitation Bars Certain of Plaintiff's Claims ................................................................................................................ 6

III. Panoramic Has Failed to Establish Liability as to Certain of its Claims ............................ 8

    A. *Science* 2/e .................................................................................................... 8

    B. *Architecture* 1/e ........................................................................................... 9

    C. *Hawaii* 3/e .................................................................................................. 10

    D. *Barbarians* ................................................................................................. 10

IV. Material Issues of Fact Prevent Summary Judgment On Several of Wiley's Affirmative Defenses ......................................................................................................... 12

CONCLUSION ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*,
  2010 WL 3785720 (D. Alaska Sept. 21, 2010) ........................................................................4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................2

*Bean v. Houghton Mifflin Harcourt Publishing. Co.*,
  2010 WL 3168624 (D. Ariz. Aug. 10, 2010) ..........................................................................4

*Bean v. John Wiley & Sons, Inc.*,
  2011 WL 3348959 (D. Ariz. Aug. 3, 2011) ............................................................................4

*Bean v. Pearson Education, Inc.*,
  2011 WL 1882367 (D. Ariz. May 17, 2011) ..........................................................................4

*Bergt v. McDougal Littell*,
  661 F. Supp. 2d 916 (N.D. Ill. 2009) ......................................................................................8

*Brooks-Ngwenya v. Indianapolis Public Schools*,
  564 F.3d 804 (7th Cir. 2009) ..................................................................................................8

*Chicago Building Design, P.C. v. Mongolian House, Inc.*,
  891 F. Supp. 2d 995 (N.D. Ill. 2012) ......................................................................................6

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
  499 U.S. 340 (1991) ................................................................................................................8

*Gaiman v. McFarlane*,
  360 F.3d 644 (7th Cir. 2004) ..................................................................................................6

*Gross v. Max*,
  906 F. Supp. 2d 802 (N.D. Ind. 2012) ....................................................................................6

*Leventhal v. Schenberg*,
  917 F. Supp. 2d 837 (N.D. Ill. 2013) ......................................................................................6

*Leviton Manufacturing Co. v. Fireman's Fund Insurance Co.*,
  226 F. App'x 671 (9th Cir. 2007) .........................................................................................11

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*,
  722 F.3d 591 (4th Cir. 2013) ..................................................................................................5

*Monotype Imaging, Inc. v. Bitstream, Inc.*,
   2005 WL 936882 (N.D. Ill. Apr. 21, 2005) ...................................................................8

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*,
   712 F. Supp. 2d 84 (S.D.N.Y. 2010), *reconsideration denied in relevant part*, 2010 WL
   3968841 (S.D.N.Y. Sept. 27, 2010) ..........................................................................4, 5

*Muench Photography, Inc. v. Pearson Education, Inc.*,
   2013 WL 6185200 (N.D. Cal. Nov. 19, 2013) ...........................................................3, 5

*Muench v. Houghton Mifflin Harcourt Publishing Co.*,
   2013 WL 4464002 (S.D.N.Y. Aug. 21, 2013) ................................................................6

*Ner Tamid Congregation of North Town v. Krivoruchko*,
   638 F. Supp. 2d 913 (N.D. Ill. 2009) ............................................................................12

*Pacini v. Regopoulos*,
   665 N.E.2d 493 (Ill. App. Ct. 1996) .............................................................................11

*Pugh v. City of Attica, Ind.*,
   259 F.3d 619 (7th Cir. 2001) ..........................................................................................2

*Smith v. Great American Restaurants, Inc.*,
   969 F.2d 430 (7th Cir. 1992) ........................................................................................12

*Turina v. Crawley*,
   2012 WL 568050 (N.D. Ill. Feb. 16, 2012) ....................................................................2

**Statutes and Other Authorities**

17 U.S.C.,
   §§ 409(2), (6) ..................................................................................................................3
   § 411(a) ..........................................................................................................................8
   § 412 .............................................................................................................................10
   § 507(b) ..........................................................................................................................6

FED. R. CIV. P. 56(a) ................................................................................................................2

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.06[B] (2011) ......................8

Defendant John Wiley & Sons, Inc. ("Wiley") respectfully submits this Memorandum of Law in opposition to the Motion for Partial Summary Judgment (Dkt. 65) by Plaintiff Panoramic Stock Images, Ltd. (d/b/a Panoramic Images) ("Panoramic").

## INTRODUCTION

Panoramic's motion for summary judgment reveals just how much this case has shrunk since it was filed as an action seeking extensive damages and injunctive relief for copyright infringement, contributory copyright infringement and fraud based on Wiley's use of eighteen different photographs in what amounted to a total of twenty-five books. Wiley's own motion for partial summary judgment (Dkt. 61) demonstrated the defects in many of those claims. Now, Panoramic's motion seeks a finding of copyright infringement liability as to just four of those books:

> (1) *Physical Geography: Science and Systems of Human Environment*, by Alan H. Strahler, 2nd edition (© 2002), herein "*Science* 2/e,"
>
> (2) *A Global History of Architecture*, by Francis D.K. Ching, and others, 1st edition (© 2006), herein "*Architecture* 1/e,"
>
> (3) *Frommer's Hawaii With Kids*, by Jeanette Foster, 3rd edition (© 2009), herein "*Hawaii* 3/e," and
>
> (4) *Barbarians of Wealth: Protecting Yourself from Today's Financial Attilas*, by Sandy Franks and Sara Nunnally (© 2010), herein "*Barbarians*."

As discussed more fully below, though, no liability can be assessed against Wiley for two of these books, leaving just two – *Architecture* 1/e and *Hawaii* 3/e – for which a summary finding of liability for copyright infringement may be entered. Even then, such liability is significantly limited by the application of the Copyright Act's statute of limitation.

1

**SUMMARY OF FACTUAL BACKGROUND**

The facts germane to the disposition of the plaintiff's motion are set forth in full in Defendant's Response to Plaintiff's Separate Statement of Facts in Support of the Motion for Partial Summary Judgment ("Resp. to SUMF"), as well as in Defendant's own separate Statement of Undisputed Material Facts ("SUMF"), *see* Dkt. 64, filed in connection with Wiley's motion for partial summary judgment.

**ARGUMENT**

Summary judgment is appropriate only where the moving party has established that there are no genuine issues as to any material facts, and that on the strength of those facts, the law requires judgment in the moving party's favor. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In this context, a non-moving defendant can defeat a plaintiff's summary judgment motion by identifying specific material factual disputes as to any of the elements of the plaintiff's cause of action. *Anderson*, 477 U.S. at 247. If the evidence is such "that a reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. *Turina v. Crawley*, 2012 WL 568050, at *2 (N.D. Ill. Feb. 16, 2012) (quoting *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001)).

In this matter, Panoramic has failed to establish that it is entitled to judgment as a matter of law with regard to three aspects of its case: sufficiency of certain of its copyright registrations, compliance with the Copyright Act's statute of limitation, and proof of non-compliance as to certain invoice restrictions. Each of these issues is discussed below.

**I.      Certain of Plaintiff's Photos Are Not Adequately Registered**

Citing only the copyright registrations themselves, Panoramic's motion asserts that the plaintiff owns "valid, registered copyrights" in the photographs subject to the motion. Pl.'s Mot. at 6. Plaintiff's argument, however, ignores defects in certain of the relevant registrations.

2

Three of the registrations at issue here – VA841-131, VA957-800, and VA1-002-221 – which together relate to five of the seven images for which Panoramic seeks summary judgment, *see* Resp. to SUMF ¶ 5,[1] are group registrations that fail to meet the registration requirements for the Images at issue here. Section 409 of the Copyright Act mandates that all copyright registrations must identify the author and title of any work that is subject of the registration. *See* 17 U.S.C. §§ 409(2), (6). The three compilation registrations listed above provide only a partial list of the photographers whose photos allegedly are encompassed in each registration, followed by a reference to the number of other photographers involved, *i.e.*, "& 21 others" or "& 125 others," or simply a reference to "et al." *See* Resp. to SUMF ¶ 5; Segal Decl. Ex. B (Dkt. 65-15). These compilation registrations omit any identifying information that would link the photographers or photographs in this case to the particular registrations.

The Court previously deferred any final decision on the sufficiency of these group registrations pending guidance from the circuit courts when Wiley raised this issue in its initial motion to dismiss. *See* Opinion and Order (Dkt. 39) at 13-15. While there have been no new rulings from the circuit courts, there has been one additional district court ruling finding these types of registrations insufficient. *See Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 6185200, at *11 (N.D. Cal. Nov. 19, 2013) ("*Muench*") (rejecting Plaintiff's reliance on group registration and granting summary judgment to publisher because, in pertinent part, "compilation registrations do not automatically register the underlying works"); *id.* at *10 & n.8 (collecting cases).

---

[1] Registration VA 841-131 includes the photograph published in *Hawaii* 3/e. *See* Compl. Ex. 1, Row 18. Registrations VA 957-800 and VA 1-002-221 relate to the four photographs used in *Science* 2/e. *See* Compl. Ex. 1, Row 3-6.; *see also* Resp. to SUMF ¶ 5.

Discovery in this case is now closed, and as a result, it is appropriate for the Court to resolve the question of the sufficiency of the plaintiff's group registrations. As noted previously, significant authority indicates that such group registrations are insufficient to meet the registration requirement for an infringement action. *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 94-95 (S.D.N.Y. 2010) (emphasis added) (dismissing copyright infringement claims), *reconsideration denied in relevant part*, 2010 WL 3968841 (S.D.N.Y. Sept. 27, 2010); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2010 WL 3785720, at *2-4 (D. Alaska Sept. 21, 2010) (plaintiff cannot maintain infringement action as to individual photographs alleged to have been registered as part of a compilation); *Bean v. John Wiley & Sons, Inc.*, 2011 WL 3348959, at *3 (D. Ariz. Aug. 3, 2011) (where plaintiff "failed to provide the titles of the individual photographs, the names of the all of the authors, and the connection between individual author and photograph . . . claims for infringement failed as a matter of law"); *Bean v. Houghton Mifflin Harcourt Publ'g. Co.*, 2010 WL 3168624, at *3-4 (D. Ariz. Aug. 10, 2010) ("[C]ompilation registrations, although valid for purposes of copyrighting the compilations themselves, did not copyright the individual photographs within the compilations. As a result, none of the . . . images at issue in this case is properly registered under the Copyright Act."); *Bean v. Pearson Educ., Inc.*, 2011 WL 1882367, at *3 (D. Ariz. May 17, 2011) (same).[2]

While some courts have disagreed with this analysis and have permitted copyright infringement claims based upon compilation registrations to proceed, *see* Dkt. 39 at 14-15 (collecting cases), the bulk of these have been at the motion to dismiss stage, where courts

---

[2] Appeals in *Alaska Stock* and *Bean* are now pending before the Ninth Circuit.

4

(including this one) have been "inclined to let the cases go forward more because of the lack of clear guidance on the issue than because of the merits." *Muench*, 2013 WL 6185200, at *12.[3] However, as one district court recently explained, the decisions approving of group registrations are not persuasive because they do not adequately explain why Section 409 of the Copyright Act should be read to endorse different application requirements for component works of a collective work versus individually registered works when statutory text itself draws no such distinction. *Muench*, 2013 WL 6185200, at *13. This rationale is particularly convincing where, as here, the registrations are so barebones and include so many photographs that they cannot possibly serve the public notice function of the Act's registration requirement. *See Muench*, 712 F. Supp. 2d at 95 ("The Court's ruling, although a seemingly harsh result . . . is guided by the clear language of the Copyright Act"); *id.* at 94-95 (granting summary judgment because "asking the Court flatly to ignore the requirement that the authors' names be listed [in a copyright registration] . . . goes a bridge too far").

---

[3] In *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013), the only court of appeals decision to have addressed this issue, the Fourth Circuit affirmed the district court's ruling granting a preliminary injunction based on its acceptance of a compilation registration. The court concluded that group "registrations [are] sufficient to permit an infringement action on behalf of component works, *at least so long as the registrant owns the rights to the component works as well.*" *Id.* at 598 (emphasis added). Here, the group registrations do not provide enough information to permit Wiley or the court to identify the registration status of the underlying or component works, let alone assess Panoramic's ownership of them. Accordingly, *Metropolitan Regional Information Systems* is doubly inapposite: It involved a pleadings-stage motion and a fact pattern distinguishable from the facts before this Court.

## II. The Copyright Act's Three-Year Statute of Limitation Bars Certain of Plaintiff's Claims

As set forth in Wiley's Memorandum of Law in Support of Its Motion for Partial Summary Judgment (Dkt. 61) ("Def.'s Mot."), certain of Panoramic's claims – including three of those for which it now seeks summary judgment in its favor – are in fact barred by the applicable statute of limitations.

Under the Copyright Act, a plaintiff may bring an action for infringement only where the infringement claim has "accrued" within three years of the plaintiff's suit, *see* 17 U.S.C. § 507(b), that is, where a plaintiff sues within three years of the date "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights."[4] *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004). "[A]ctual knowledge of an infringement is not required to trigger the running of the statute of limitations. Rather, the statute [begins] to run when [a plaintiff] ha[s] knowledge that would [lead] reasonable people to investigate the possibility that their legal rights had been infringed." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 891 F. Supp. 2d 995, 999 (N.D. Ill. 2012). If a plaintiff knew or should have known of its claims more than three years before filing its claim, the plaintiff is barred from recovering damages "for any acts of infringement accruing prior to . . . three years before the filing of" the operative complaint. *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 846 (N.D. Ill. 2013); *see also* Def.'s Mot at 14 n.7.

---

[4] As noted in its own motion, Wiley submits that recent Supreme Court case law has made clear that the appropriate accrual standard for claims – such as those brought by Panoramic here – is the "injury rule," that is, the date when the infringement occurred. *See Muench v. Houghton Mifflin Harcourt Publ'g Co.*, 2013 WL 4464002, at *6 (S.D.N.Y. Aug. 21, 2013); *see also Gross v. Max*, 906 F. Supp. 2d 802, 810 (N.D. Ind. 2012); Def.'s Mot. at 13 n.6.

6

In this case, and as set out in more detail in Wiley's own motion for summary judgment, Plaintiff plainly knew of the need to investigate the possibility of its claims well before December 17, 2009. *See id.* at 14-15. The evidence establishes beyond any room for debate that Panoramic's principal Douglas Segal had explicit discussions sometime in November 2009, or earlier, with Panoramic's attorneys concerning plans to bring claims for copyright infringement against Wiley. *See id.* at 2, 4-5. Panoramic's halfhearted assertions attempting to undermine this evidence, *see* Segal Decl. (Dkt. 65-09), do not weaken its persuasive force. Rather, the testimony in Segal's declaration admits that in November 2009, he was "generally aware that there were allegations that some textbook publishers had exceeded the limits of licenses for some photographs." *Id.* ¶ 26. Indeed, as documents produced in this case show, by November 2009, Segal knew not only of general allegations but also that publishers with whom Panoramic had done business, *including Wiley*, were among the alleged infringers. *See* Declaration of Christopher P. Beall, dated January 4, 2014 (Dkt. 62), Ex. 8.

Moreover, even if Panoramic did not have *actual* knowledge of its claims before December 17, 2009, which it plainly did, the evidence concerning the surrounding circumstances in the stock photo industry, and the awareness in the trade of the potential for copyright infringement claims, as indicated by Panoramic's email exchange with counsel, indicates that Panoramic was constructively aware of its possible claims, triggering the running of the statute of limitations.

In this context, any reasonable person would have acted expeditiously upon this awareness and investigated his claims. To be sure, Segal did; he contacted the law firm Harmon & Seidman by early November 2009, inquiring about hiring the firm as Panoramic's counsel

7

concerning alleged infringements of its copyrights. *Id.* By any measure, Panoramic's claims against Wiley therefore accrued at least by November 2009, if not earlier.

Thus, in light of the evidence concerning Panoramic's awareness of potential claims, the Copyright Act bars Panoramic's claims for damages based on acts of alleged infringement that took place prior to December 17, 2009.[5]

### III. Panoramic Has Failed to Establish Liability as to Certain of its Claims

A plaintiff seeking summary judgment as to liability for copyright infringement must establish the absence of any material factual dispute as to both elements of the claim, that is, valid ownership of exclusive copyright rights, including adequate copyright registrations, and unauthorized copying by the defendant. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009) (citing 17 U.S.C. § 411(a)); *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 921 (N.D. Ill. 2009). In this case, however, there remain continuing questions of material fact as to whether Wiley's uses of Panoramic's photos are actionable and unauthorized:

#### A. *Science* 2/e

The *Science* 2/e book was first published August 23, 2001, and all of the printings and the sales of the book were completed prior to May 2007, the end of Wiley's 2007 fiscal year. *See* Resp to SUMF ¶ 15; Declaration of Lisa Suarez ("Suarez Decl.") ¶¶ 3(a)-(b). Accordingly, there were no printings or sales that occurred within the three-year limitations period reaching back

---

[5] For the same reasons, summary judgment is inappropriate as to Wiley's laches affirmative defense. Courts routinely understand laches to present a question of fact, and Wiley's evidence as to non-compliance with the statutory limitations period is equally probative as to its laches defense. *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.06[B] (2011). Here, Plaintiff was dilatory in bringing its complaint, its delay cannot be excused, and this delay has caused damaged to Wiley's ability to have finality and predictability in its finances. *See Monotype Imaging, Inc. v. Bitstream, Inc.*, 2005 WL 936882, at *9-11 (N.D. Ill. Apr. 21, 2005).

from the December 17, 2012, filing date of this case. Thus, all of the claims for unauthorized printing or sales of the *Science* 2/e books are time barred.

Moreover, at least one aspect of Panoramic's infringement claims on this title is not viable on its merits, regardless of the application of the statute of limitation. Specifically, Panoramic contends that Wiley engaged in unauthorized electronic distribution of Panoramic's photos, but it has submitted no evidence that any of Panoramic's photos were included in the electronic editions of the *Science* 2/e book. Indeed, the only available evidence directly establishes exactly the opposite: With regard to the CD-ROM disk that was distributed with the *Science* 2/e textbook, deposition testimony demonstrates that it contained no photographs whatsoever, let alone Panoramic's photos. *See* Beall Decl. Ex. 2 at 17:12-15, 69:11-13.

**B.** *Architecture* **1/e**

The *Architecture* 1/e textbook was published on August 7, 2006, and the last of the printings of this book occurred in November 2007, prior to the December 17, 2009 limitation-period cut-off. *See* Resp. to SUMF ¶ 16; Suarez Decl. ¶ 3(c). Although Wiley concedes that its printings of this book exceeded the 8,000-copy print run limit in Panoramic's invoice, Panoramic's claim of infringement based on those *printings* of Walter Bibikow's photo of the ruins of an ancient Roman villa in Capri, Naples is barred by the statute of limitations.

Instead, the only actionable claim by Panoramic in connection with *Architecture* 1/e is for the *distribution*, as opposed to printing, of unauthorized copies after December 17, 2009. Wiley's sales records show that a total of ▇▇▇ copies of the book were sold by Wiley after May 2009. *See* Confidential Declaration of Lisa Suarez ("Suarez Confidential Decl.") ¶ 3. Among those sales are also Wiley's distribution of the e-book edition of *Architecture* 1/e, which Wiley concedes was unauthorized based on the language of Panoramic's invoice. Hence, Wiley's

9

liability includes the value of both the unauthorized print and electronic distribution after December 17, 2009.[6]

### C. *Hawaii* 3/e

The *Hawaii* 3/e guide book was published on February 6, 2009, and all copies of this book were printed at that time, well before the December 17, 2009, limitations-period cut-off. *See* Resp. to SUMF ¶ 17; Suarez Decl. ¶ 3(d). Wiley's printings of this book were within the 25,000-copy print run listed in the Getty invoice for Allen Prier's generic image of the Kona coastline in Hawaii. Rather, Wiley concedes that the sole basis for liability concerning *Hawaii* 3/e involves Wiley's publication of e-book editions of the book in April 2009. *See* Resp. to SUMF ¶ 14. However, as Wiley will demonstrate when the Court considers the proper measure of damages, the amount of such distribution after December 17, 2009, is extremely limited.

### D. *Barbarians*

The *Barbarians* book was published November 19, 2010, and hence, this claim alone of the four at issue in Panoramic's motion is not affected by the statute of limitation. *See* Resp. to SUMF ¶ 18; Suarez Decl. ¶ 3(e). The sole basis of Panoramic's theory of infringement is that Wiley purportedly exceeded Getty's limitation on the number of copies of Panoramic's photo that Wiley could print.[7] *See* Pl.'s SUMF ¶ 12. However, separate from any print run amount

---

[6] Mr. Bibikow's photo was not registered until September 19, 2012, after Wiley's infringement had commenced. *See* Segal Decl. Ex. B (Dkt. 65-15). As a result, Panoramic is not eligible to recover statutory damages or attorney's fees as to this photo. *See* 17 U.S.C. § 412.

[7] Note that Exhibit 1 to the Johnson Declaration asserts that Wiley's electronic distribution of the Panoramic photo in *Barbarians* was "unlicensed." *See* Dkt. 65-4. This assertion is false. The invoice from Getty for this book states explicitly that the usage for this photo included "electronic" formats, and that the invoice price included "electronic distribution rights." *See* Resp. to SUMF ¶ 18; Beall Decl. Ex. 4. Despite this inaccurate reference to "unlicensed" electronic distribution in the claim chart accompanying the Johnson Declaration, Panoramic seems not to be pursuing that theory of infringement, and it is not asserted in Panoramic's statement of undisputed facts. *See* Pl.'s SUMF ¶ 14.

10

listed in the Getty invoice for this book, the base price that Wiley paid for use of Getty-licensed photos at this time – $750, *see* Beall Decl. Ex. 4 – covered distribution of up to 200,000 copies, far more than Wiley actually ever printed or sold, *see* Resp. to SUMF ¶ 18; Declaration of Mary Ann Price ("Price Decl.") ¶ 5. As a result, even though Wiley ended up printing more than the 10,000 copies listed in the Getty invoice, Wiley had already paid Getty for the full value of the printings that it actually made of that photo. Thus, even if Wiley had printed twice as many copies of the *Barbarians* book than it did, Getty still would not have been entitled to any additional payment under Getty's pricing agreement. *See* Resp. to SUMF. ¶ 18; Price Decl. ¶ 5.

Moreover, even though Wiley did indeed print more copies of the *Barbarians* book than the 10,000 amount listed on the face of Getty's invoice, Wiley in fact sold far fewer than that 10,000-copy limit. *See* Resp. to SUMF ¶ 18; Suarez Decl. ¶ 3(f). As a result, even if the 10,000-copy print run in Getty's invoice somehow operates to limit Wiley's authorization to use the Bruce McNitt photo of a scattering of gold coins -- which it did not in light of Wiley's pricing agreement with Getty -- Panoramic was not actually harmed because Wiley's actual sales of this book are well below the 10,000-copy threshold. *See* Resp. to SUMF ¶ 18; Suarez Decl. ¶ 3(f). In this sense, Panoramic cannot establish any actual harm – *i.e.*, no injury – resulting from Wiley's distribution of this book because though Wiley printed more than 10,000 copies, it has sold far less. *See, e.g.*, *Leviton Mfg. Co. v. Fireman's Fund Ins. Co.*, 226 F. App'x 671, 673 (9th Cir. 2007) (court must consider "the scope and performance" under a contract and minor breaches with no evidence of actual damages by plaintiff are insufficient for a finding of liability); *Pacini v. Regopoulos*, 665 N.E.2d 493, 497-98 (Ill. App. Ct. 1996) (finding minor breach of contractual obligation was such a small amount that under the *de minimis non curat lex* doctrine no breach had occurred).

11

\*

In light of the foregoing, the only viable infringement claims for which there are no genuine issues of material fact are those for unauthorized distribution of Panoramic's photos in *Architecture* 1/e and *Hawaii* 3/e after December 17, 2009. All other claims are barred by the statute of limitation or otherwise lack undisputed evidence establishing liability.

### IV. Material Issues of Fact Prevent Summary Judgment On Several of Wiley's Affirmative Defenses

Panoramic's motion also includes seriatim contentions that Wiley has no evidence to support any of its affirmative defenses. *See* Pl's Mot. at 10-15. Some of these defenses, however, such as the statute of limitations, laches, implied license/course of dealing, and sufficiency of copyright registrations, are indeed contested issues for which Wiley has presented substantial evidence in both this Response and in its own motion for summary judgment.[8] *See* Dkt. 61. Many of the other affirmative defenses that Panoramic attacks are relevant to damages and are not germane to Panoramic's motion for summary judgment solely as to liability. Those additional defenses – timeliness of registrations for purposes of eligibility for statutory damages, innocent intent, and mitigation of damages – are relevant to the proper measure of any damages Panoramic ultimately might seek to recover. Accordingly, summary judgment is inappropriate as to these damages defenses at this stage. *See Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 438 (7th Cir. 1992) ("The issue of mitigation is a question of fact for the jury."); *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 920 (N.D. Ill. 2009) (noting that "failure to mitigate is not a defense to liability; it concerns only the amount of recoverable damages, not the right to recover damages").

---

[8] Separate from its various defenses on damages issues, Wiley hereby withdraws its affirmative defenses as to liability relating to: lack of standing, impropriety of copyright assignments, estoppel, unclean hands, and Section 201(c) of the Copyright Act.

**CONCLUSION**

In light of the foregoing, the Court should deny Panoramic's motion for partial summary judgment as to its copyright infringement claims with respect to Panoramic's photos in *Science* 2/e and *Barbarians*, and it should enter summary judgment as to liability solely as to the distribution of the Panoramic photos in *Architecture* 1/e and *Hawaii* 3/e that occurred after December 17, 2009.

Dated: February 4, 2014

By: */s Christopher P. Beall*
Christopher P. Beall
Julie B. Ehrlich
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, New York 10036
(T): (212) 850-6100
(F): (212) 850-6299
cbeall@lskslaw.com
jehrlich@lskslaw.com

William McGrath
Kevin Thompson
Davis McGrath LLC
125 South Wacker Drive
Chicago, Illinois 60606
(T): (312) 332-3033
(F): (312) 332-6376
wmcgrath@davismcgrath.com
kthompson@davismcgrath.com

*Attorneys for Defendant*
*John Wiley & Sons, Inc.*

**CERTIFICATE OF SERVICE**

      I, Christopher P. Beall, an attorney and counsel of record for Defendant John Wiley & Sons, Inc., certify that I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** to be electronically filed with the Clerk of Court using the CM/ECF filing system, which will send automated notification of this filing to all counsel of record on this date.

Dated: February 4, 2014

                                                 By:   */s Christopher P. Beall*