# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PANORAMIC STOCK IMAGES, LTD., d/b/a PANORAMIC IMAGES,<br><br>  Plaintiff,<br><br>  v.<br><br>JOHN WILEY & SONS, INC.<br><br>  Defendant. | CASE NO. 1:12-cv-10003<br><br>Hon. Judge Gary Feinerman<br>Magistrate Judge Daniel G. Martin<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** |

Christopher P. Beall
Michael Beylkin
Mara J. Gassmann
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(T): (212) 850-6100
(F): (212) 850-6299
cbeall@lskslaw.com
mbeylkin@lskslaw.com
mgassmann@lskslaw.com

William McGrath
Davis McGrath LLC
125 South Wacker Drive
Chicago, Illinois 60606
(T): (312) 332-3033
(F): (312) 332-6376
wmcgrath@davismcgrath.com

*Attorneys for Defendant*
*John Wiley & Sons, Inc.*

Defendant John Wiley & Sons, Inc. ("Wiley") submits this Memorandum of Law in Opposition to Plaintiff Panoramic Stock Images, Ltd.'s ("Panoramic") Motion for Attorneys' Fees and Non-Taxable Costs (Dkt. No. 206).

## PRELIMINARY STATEMENT

Panoramic pursued this case asserting three liability counts against Wiley, with its copyright claims encompassing twenty instances of eighteen photos in seventeen titles published by Wiley. But before it ever reached trial, Panoramic had withdrawn nearly three-quarters of the copyright claims in the face of a discovery record showing Wiley's non-liability on the invoices in question, and Panoramic later withdrew its fraud count midway through trial as a result of the Court's rulings on that cause of action. In all, Panoramic succeeded in obtaining damages only as to six photos. That is, Panoramic prevailed on less than a quarter of its case.

Throughout the litigation of this action, Wiley raised substantial defenses, both legal and factual, including the defects in Panoramic's fraud cause of action, the insufficiency of certain of Panoramic's copyright registrations, the applicability of the statute of limitation based on direct communications between Panoramic and its counsel more than three years prior to suit, and the pattern and practice in the textbook industry regarding photo licensing. All of these defenses were well-founded, even if some were not accepted by the jury. Panoramic can point to no specific evidence of bad faith motivation by Wiley, no frivolousness in Wiley's litigation conduct, and no objective unreasonableness in Wiley's positions. *Cf.* Mot. at 4 (conclusory allegation that "Wiley . . . r[an] up the litigation bill"). Wiley was not required to simply roll over and abandon its arguments. Ultimately, the amount awarded by the jury is more than sufficient to compensate both Panoramic and its counsel, as well as to deter the overuse at issue.

1

Panoramic's fee request does not further the goals of the Copyright Act and should thus be denied or, in the alternative, significantly reduced.

## ARGUMENT

I. **Because Wiley's Defense Was Objectively Reasonable and Because Plaintiff's Significant Award is More Than Sufficient Compensation, No Attorneys' Fee Award is Necessary**

Under Section 505 the Copyright Act, no party is ***entitled*** to recover attorneys' fees and non-taxable costs as a matter of course. *E.g.*, *Janky v. Lake Cnty. Convention & Visitors Bureau*, 2007 WL 2413021, at *5 (N.D. Ind. Aug. 20, 2007) ("Unlike other fee shifting statutes, such an award is not mandatory."). Rather, as the Supreme Court recognized in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994), by rejecting the notion that fees under Section 505 should be awarded as a matter of course, fees and non-taxable costs should be awarded "***only as a matter of the court's discretion***." *Id.* (emphasis added); *Janky*, 2007 WL 2413021, at *5.

In exercising that discretion, the Court must look to several factors, including the losing party's "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case)[,] and the need in particular circumstances to advance consideration of compensation and deterrence." *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609 (7th Cir. 2002) (quoting *Fogerty*, 510 U.S. at 535 n. 19). The Seventh Circuit has further stated that in exercising this discretion:

> The two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained. ***If the case was a toss-up and the prevailing party obtained generous damages*** . . . there is no urgent need to add an award of attorneys' fees.

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004) (emphasis added). In assessing the strength of the prevailing party's case, a court must be mindful that "[n]ot all unsuccessfully litigated [defenses] are objectively unreasonable." *FASA Corp. v.*

2

*Playmates Toys, Inc.*, 1 F. Supp. 2d 859, 864-65 (N.D. Ill. 1998) ("As the trier of fact, who carefully evaluated the testimony throughout the pretrial proceedings and the three-week trial, this Court expressly concludes that [losing party's] litigation behavior was objectively reasonable and does not support an award of attorneys' fees."); *see also Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001) (noting that objective reasonableness of a losing party's position "is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted"). Of course, fees should only be awarded when an award would be "faithful to the purposes of the Copyright Act." *Matthew Bender & Co.* 240 F.3d at 122; *Fogerty*, 510 U.S. at 534 n.19.

The jury award of $403,500 on photos that were licensed for a few hundred dollars is more than sufficient to compensate Panoramic and its counsel. And, as evidenced by this Court's rulings on summary judgment, at the pre-trial conference, and during the trial itself, Wiley's litigation positions were not only objectively reasonable, but rooted in well-established law and Wiley's own good faith understanding of the decades-long stock-photo industry licensing practices. Thus any fees award here would not be faithful to the purposes of the Copyright Act and would otherwise amount to another windfall to Panoramic and its counsel.

### A. Wiley's Litigation Positions Were Objectively Reasonable

In the wake of *Fogerty*, many courts, including the Seventh Circuit, have placed substantial weight on the objective reasonableness of the losing party's factual and legal contentions. *E.g.*, *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 730 (7th Cir. 1998) ("A party who propounds a reasonable claim should not be penalized, whether or not the judge buys the claim."); *FASA*, 1 F. Supp. 2d at 863-64 (rejecting any fee award because "[t]he record in this case does not establish 'objective unreasonableness' under any conceivable definition of the term"); *Janky*, 2007 WL 2413021, at *9 (same); *see also Matthew Bender & Co.*, 240 F.3d at

121-22 (collecting cases)). This factor is particularly important given that the interests of the Copyright Act are furthered by "encouraging the raising of objectively reasonable claims and defenses, which . . . ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27).

Wiley's defenses, such as the statute of limitation or custom and practice in the industry, were not objectively unreasonable simply because they proved to be unsuccessful. *Janky*, 2007 WL 2413021, at *6 ("[T]he case was not as one-sided as Janky portrays. Genuine issues of fact were present regarding a possible license, the potential scope of such license, and the nature and extent of the infringement. . . . The fact that the jury resolved the issues in favor of Janky does not require an award of attorney fees under § 505."); *see also Virtual Studios, Inc. v. Beaulieu Group, LLC*, 987 F. Supp. 2d 769, 784 (E.D. Tenn. 2013) ("There were legitimate questions regarding [Plaintiff's] long wait to raise these claims as well as a history of agreements between the parties. Relying on these theories at trial, although they were rejected by the jury, was reasonable trial strategy."); *cf.*, *e.g.*, Dkt. No. 141 (raising similar issues for trial). Further, although the jury found willful infringement, that verdict does ***not***, *ispo facto*, establish that Wiley's legal positions were objectively unreasonable. *Agence France Presse v. Morel*, No. 1:10-cv-02730-AJN (S.D.N.Y. Mar. 23, 2015) (Dkt No. 367, Mem. & Order) (refusing to award fees where willful infringer's defenses were objectively reasonable) (attached to Declaration of Michael Beylkin ("Beylkin Decl."), Ex. A at 5-7); *Psihoyos v. John Wiley & Sons, Inc.*, 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013) (refusing to award fees where Wiley's legal positions were objectively reasonable even though jury ultimately concluded that the infringement was willful); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 463

4

(D. Md. 2004) (awarding no fees against willful infringer because, among other things, "[a]lthough Legg Mason has made some incredible arguments, this litigation is likely to clarify the law in some respects and, therefore, was not of absolute insignificance. Further, Legg Mason presented non-frivolous defenses at trial"). Indeed, only those defenses "that are clearly without merit or otherwise ***patently devoid of legal or factual basis*** ought to be deemed objectively unreasonable." *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (emphasis added) (quotation omitted). No such finding has been made here, nor could it.

Panoramic accuses Wiley of "over-litigating this case," Mot. at 3, but ignores that nearly three-fourths of the pleaded copyright claims were ***dropped, withdrawn, or otherwise conceded*** prior to trial. Dkt. No. 84-1, ¶ 13; Dkt. No. 116, at 5 ("Panoramic filed this suit on December 17, 2012, alleging that Wiley infringed its copyrights on twenty photographs. Panoramic has withdrawn its claims as to eleven of those photographs." (internal citations omitted)); Dkt. No. 128-13 (same); Beylkin Decl., Ex. B (Tr. 20:13-18). Panoramic's tag-along count for fraud, raised purely for the specter of punitive damages, and which the Court surmised could have been dismissed at summary judgment, was ultimately withdrawn mid-trial. Beylkin Decl., Ex. C (Tr. 838:17-19, 839:7-10, 843:2-844:1, 847:1-2); *cf. Morel*, Beylkin Decl., Ex. A at 6.

Panoramic ignores that this lawsuit involved numerous unsettled issues of law that were vigorously – and appropriately – litigated by Wiley in good faith, including:

- Whether Panoramic could maintain a fraud claim based on conduct and alleged harm fully encompassed within its copyright claims;
- Whether Panoramic could adequately demonstrate ownership of sufficient rights in several of the photos;
- Whether the industry's custom and practice precluded claims for infringement;

5

- Whether Panoramic's communications with others, including its counsel, more than three years prior to suit barred a significant portion of the case under the statute of limitations; and,

- Whether the injury rule for accrual applies to copyright infringement claims, including in light of recent Supreme Court decisions.

*Id.*, Ex. C (Tr. 838:17-19, 839:7-10, 843:2-844:1, 847:1-2); *id.*, Ex. D (Tr. 5-17, 36:5-17); Dkt. Nos. 61, 74, 86, 116. These issues were raised at summary judgment, in the pretrial run-up, and several continue to be hotly-contested and reasonably in question. *Id.*; Dkt. Nos. 197, 203. Courts have repeatedly recognized that "the presence of a complex or novel issue of law that the defendant litigates vigorously and in good faith," *Fogarty*, 510 U.S. at 521 n.6, may justify the denial of fees to a plaintiff. *Automation By Design, Inc. v. Raybestos Prods. Co.*, 2005 WL 4889223, at *1 (S.D. Ind. July 26, 2005) (denying fees "in a case that required the court to analyze an area of law where the Seventh Circuit's position was somewhat vague"); *FASA*, 1 F. Supp. 2d at 862 (same); *see also Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74-75 (1st Cir. 1998) ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries"); 5 MELVILLE D. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.10[D][1] (2015) ("attorney's fees should not be awarded if . . . a novel or complex question of law is involved and the losing party acted in good faith"); *Psihoyos*, 2013 WL 1285153, at *3; *Morel*, Beylkin Decl., Ex. A at 5-7.

Further, Wiley also presented candid – and uncontradicted – testimony from the employees involved in its photo licensing that no one at Wiley had intentionally sought to use Panoramic's photos in excess of permission. Beylkin Decl., Ex. E (Tr. 277:3-5); *id.*, Ex. F (Tr. 351:15-25, 361:6-24, 375:11-24, 379:6-382:1, 383:6-24); *id.*, Ex. G (Tr. 452:6-454:12, 468:17-471:7, 504:7-506:15, 517:24-523:5); *id.*, Ex. H (Tr. 641:3-646:8). Wiley's evidence clearly established that the excess use occurred as a result of bureaucratic breakdowns in Wiley's

processes that were neither knowing nor malicious. *Id.* The fact that the jury concluded that the facts rose to a level of willful infringement, rather than merely negligence, was not a necessarily inevitable or automatic outcome. *E.g.*, *Martin v. City of Indianapolis*, 192 F.3d 608, 614 (7th Cir. 1999) (holding that infringement resulting from "bureaucratic ineptitude" within a defendant organization does not amount to willfulness). As Judge Oetken concluded in denying fees to an identically-situated plaintiff (and despite a similar finding of willfulness by the jury):

> This was not a case involving brazen, intentional copying of an unrelated third party's copyrighted works. Rather, it arose in the context of a complex three-party framework in which Plaintiff . . . had generally authorized the use of [the] works (as stock photographs), subject to a certain payment structure—but where [Wiley] had failed to obtain permission . . . for particular uses. Indeed, in a case such as this, where the line between recklessness and negligence is such a thin one, it would have been unreasonable for Defendant not to make the arguments it made to the jury.

*Psihoyos*, 2013 WL 1285153, at *3.

Moreover, the evidence at trial demonstrated without contradiction, that Wiley has already expended substantial amounts to develop new systems to avoid the kind of unauthorized use of photos that occurred in this case. *E.g.*, Beylkin Decl., Ex. E (Tr. 277:1-279:17; *id.*, Ex. F (Tr. 398:11-406:11); *id.*, Ex. G (Tr. 465:8-468:2, 517:24-523:5). Nor is this case a "new" instance of infringement; the cases that Panoramic relies upon to drum up an appearance that Wiley is repeat infringer *all* dealt with identically-situated conduct (and most brought by the same plaintiff's counsel here) implicating the very same breakdown in photo usage monitoring. *Cf.* Mot. at 4-5 nn.10 & 13; Beylkin Decl., Ex. E (Tr. 277:3-5); *id.*, Ex. F (Tr. 351:15-25, 361:6-24, 375:11-24, 379:6-382:1, 383:6-24); *id.*, Ex. G (Tr. 452:6-454:12, 468:17-471:7, 504:7-506:15, 517:24-523:5); *id.*, Ex. H (Tr. 641:3-646:8). The unchallenged testimony of Wiley's witnesses at trial demonstrated that any isolated instances of continued infringement were not intentional. Beylkin Decl, Ex. H (Tr. 601:5-604:19).

7

Finally, Panoramic's reliance on Judge Dow's warning, at the outset of an unrelated parallel litigation, is misplaced. Mot. at 3 (quoting Judge Dow in *Frerck v. John Wiley & Sons, Inc.*, 850 F. Supp. 2d 889, 895 (N.D. Ill. 2012)). As Judge Dow noted, where "the calculation of Plaintiff's damages is ***a straightforward formula based on the licensed per use fee and the number of uses that exceeded the license limit***, . . . [he] will have little sympathy" for a protracted litigation arriving at the same damages result. *Id.* (emphasis added). But Wiley did make such calculations here; indeed it offered a significant multiple of those calculations to Panoramic on no fewer than two occasions, including a Fed. R. Civ. P. 68 offer on the eve of trial. *See* Confidential Declaration of Ashima Aggarwal, ¶¶ 3-5 (describing settlement offers by Wiley, which amounted to between 8x and 22x multiples of the license fees at issue in the entire lawsuit, not just the six claims headed for trial).[1] Panoramic refused these offers. *Id.* Certainly Wiley was not required to simply abdicate its objectively reasonable defenses and agree to demands far in excess of those "straightforward" license fees.

As Judge Nathan appropriately concluded in the *Morel* case, in refusing to award fees to the prevailing plaintiff-photographer, and where the jury had ultimately awarded maximum statutory damages on eight photos, "[t]he fact that this was a close case on the merits, involving novel legal issues, persuades the Court that the purposes of the Copyright Act are not furthered by awarding fees and costs pursuant to § 505." *Morel*, Beylkin Decl., Ex. A at 5-7. That conclusion is equally true here.

---

[1] Contemporaneously and by separate motion, Wiley is seeking leave of the Court to submit this Confidential Declaration under seal.

### B. The Jury Award of More Than *100 Times* the Invoice Price is More than Sufficient to Compensate Panoramic

After two years of litigation, Panoramic was able to convince a jury to set statutory damages awards (and an actual damages award) at levels that clearly incorporate all aspects of the Copyright Act's goals of remuneration and deterrence. *Cf.* Dkt. Nos. 177 at 23, 181 at 2-3. To justify its request for another $270,000, Panoramic mistakenly argues that because the jury did not consider attorneys' fees in fashioning its award, Panoramic has not been sufficiently compensated. Mot. at 6-7. But that is simply not the test for whether a discretionary award of fees is necessary, especially where the amount of damages awarded is more than a ***100-fold*** multiple of the licensing fees that Wiley originally paid.

Importantly, in this context, plaintiff's assertion of a blanket presumption in favor of fees for prevailing plaintiffs in copyright cases is simply ***not*** the Seventh Circuit approach (nor is it reconcilable with *Fogerty*, 510 U.S. at 533-34). *See Janky*, 2007 WL 2413021, at *6-7; *cf.* Mot. at 2 & n.3.[2] Rather, this Circuit has fashioned, in the exercise of the necessary ***discretion*** under Section 505, a "presumption" in favor of fees in circumstances that are ***not*** present here: (i) where the prevailing party is a defendant, or (ii) where the plaintiff has received a small award insufficient to compensate its counsel and to "deter future copyright infringements." *Janky*, 2007 WL 2413021, at *6 (citing *Woodhaven Homes v. Realty, Inc. v. Hotz*, 396 F.3d 822, 823

---

[2] Each of the cases Panoramic cites, *e.g.*, *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093 (7th Cir. 2008), *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008), *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822 (7th Cir. 2005), and *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004), dealt with a prevailing ***defendant***, who by definition takes nothing from its victory. *Cf.* Mot. at 2 n.3. Moreover, the "presumption" discussed in these cases arises from the notion that "[t]he party responsible for creating excessive legal costs must bear them itself in the end." *E.g.*, *Riviera Distribs.*, 517 F.3d at 929. As discussed *supra*, Wiley's factual and legal contentions were all well-placed and furthered the purposes of the Copyright Act. *See cases* cited *supra* at 2-7.

(7th Cir. 2005), and *Gonzales v. Transfer Technologies, Inc.*, 301 F.3d 608 (7th Cir. 2002)).

Instead, the proper question under controlling Supreme Court precedent is whether a fee award on top of a more than sizable judgment is necessary to "advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19. The "most persuasive of the factors considered significant to the Seventh Circuit" are the amount of damages and scope of relief obtained by the plaintiff. *Janky*, 2007 WL 2413021, at *6. In this case, the considerable damages awarded by the jury more than fully vindicates the Copyright Act. *See also, e.g.*, *Psihoyos*, 2013 WL 1285153, at *4-5 (finding that the jury's awards of $100,000 on one photo and $30,000 on another were more than adequate to serve both the Act's compensatory and deterrence purposes). Indeed, in *Psihoyos*, Judge Oetken noted that the verdict amount was far greater than the reasonable licensing fee that would have been charged, and thus, even though the jury had found Wiley's conduct willful, there was simply no "need to further deter Defendant's behavior." *Id.* at *5; *see also Morel*, Beylkin Decl., Ex. A at 13 (finding that the "purposes of the Copyright Act [were] already substantially advanced by virtue of [plaintiff's] significant damages award" and that the court "d[id] not believe there is a need to further deter the . . . Defendants"). The same is true here.[3]

---

[3] Numerous courts have found that a modest multiple of the typical licensing fee is adequate compensation even where defendant's conduct has been found to be willful. *See, e.g.*, *Sixx Gunner Music v. The Quest, Inc.*, 777 F. Supp. 2d 272, 274 (D. Mass. 2011) (setting a statutory damage award at "approximately twice the unpaid fees"); *Gnat Booty Music v. Creative Catering of Wadhams, LLC*, 761 F. Supp. 2d 604, 609-10 (E.D. Mich. 2011) ("Because the statutory damages rule is designed to deter wrongful conduct, courts have routinely ordered damages well in excess of—and typically approximately three times—the amount the defendant would have paid if it had properly obtained a license."); *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 509 (E.D. Va. 2009) (awarding "slightly more than two times" the unpaid licensing fee "[g]iven Defendant's blatantly willful conduct"); *U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F Supp. 1220, 1229 (N.D. Ga. 1991) (awarding approximately three times the license fee in a case involving willful infringement).

Just as in *Psihoyos* and *Morel*, Panoramic's jury award here lies at the top end of allowable statutory damages. The jury's verdict amounts to almost **100 times** the license fees that Panoramic charged for the six photos on which it prevailed, that is **10,000%** of the $4,090 invoice price for these six stock photos. *See* Tr. Exs. J-1, J-2 & J-6. Indeed, looking only at each of the five statutory damage awards, Panoramic's damages award represents **167** and **83** times the non-exclusive license fees that Panoramic charged Wiley. *Id.*

The statutory damages awards in this and the *Psihoyos* cases reflect punishment and deterrence for the ***same*** general licensing conduct. Indeed, the claims in both this case and *Psihoyos* involve the same time periods of Wiley's photo invoicing procedures. Wiley has, in effect, been punished ***twice*** for ***long past*** conduct. The uncontradicted evidence of Wiley's ongoing remedial effort showed that Wiley is meeting its obligation to avoid such infringement in the future. Beylkin Decl., Ex. E (Tr. 277:1-279:17); *id.*, Ex. F (Tr. 351:15-25, 361:6-24, 375:11-24, 379:6-382:1, 383:6-24, 398:11-406:11); *id.*, Ex. G (Tr. 452:6-454:12, 465:8-468:2, 468:17-471:7, 517:24-523:5); *id.*, Ex. H (Tr. 641:3-646:8). This effort, as well as the costs of dozens of suits and two sizeable jury verdicts, obviates any need for further deterrence. *See Psihoyos*, 2013 WL 1285153, at *5 ("This Court has already made clear its view that it was 'quite appropriate' for the jury 'to deter the infringements of other publishers as well as the conduct of [Wiley]' . . . . But it does not follow that there is any need to further deter [Wiley]'s behavior." (internal citations and quotation omitted)).

Put simply, this is not a case where a plaintiff was "forced to litigate against 'quixotic' positions." *Morel*, Beylkin Decl., Ex. A at 13. Rather, Panoramic "fought and won a fair fight, resulting in a substantial award from the jury," and the goals of the Copyright Act "would not be further served by awarding . . . attorneys' fees and costs." *Id.* Accordingly, in its exercise of

11

discretion, the Court should decline to award Panoramic any fees or costs.

## II. Plaintiff's Fee Application Ignores the Limited Degree of Success It Achieved Over the Course of this Litigation

Even if this Court were to find that a fee award is appropriate, the Court should use its discretion to reduce the amount requested by Panoramic by at least 70%, as the ultimate verdict in this case only found Wiley liable on six of the twenty infringement claims that Panoramic originally pleaded. Moreover, Panoramic continued to pursue its simultaneous count for fraud, even though the settled law made clear that its fraud theory was non-actionable, all to inflate the *in terrorem* value of the case. Beylkin, Decl., Ex. C (Tr. 838:5-839:10, 843:2-844:18).

In this vein, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees" so that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relating to the results obtained." *Medline Indus., Inc. v. Medline Prods. Co.*, 2004 WL 1921020, at \*4 (N.D. Ill. July 8, 2004) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)). If "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount. ***This will be true even when the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith***." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, at \*11-13 (E.D. Pa. May 24, 2005) (emphasis added) (quoting *Hensley*, 461 U.S. at 436) (applying 66% reduction because "Plaintiffs achieved limited success based on the number of claims they originally asserted"); *see Sottoriva v. Claps*, 441 F. App'x 384, 385-86 (7th Cir. 2011) (affirming 67% reduction because degree of success is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief").

Further, "'[t]here is no precise rule or formula' for assessing reasonable attorney's fees where the plaintiff has achieved partial success" and the court "'may simply reduce the award to

account for the limited success' without undertaking an hour-by-hour calculation." *E.g.*, *Knitwaves, Inc. v. Lollytogs Ltd.*, 104 F.3d 353 (Table), 1996 WL 680757, at *2 (2d Cir. 1996) (quoting *Hensley*, 461 U.S. at 436 (1983)); *see Balsley v. LFP, Inc.*, 2011 WL 1303738, at *7 (N.D. Ohio Mar. 31, 2011) (reducing fee request by 60% as "equitable given Plaintiffs' partial success in this case"); *Glass v. Sue*, 2011 WL 561028, at *6 (C.D. Cal. Feb. 8, 2011) (applying 80% reduction where plaintiff prevailed on only 1 of 6 copyright claims); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127, 133-34 (E.D.N.Y. 1998) (50% reduction for partial success even where jury found infringement was willful).

Panoramic argues its fee request should not be reduced because Wiley allegedly "pursu[ed] ill-considered defenses." Mot. at 3-4. But, as the Court is well aware, each and every defense Wiley proffered was supported by record evidence, as demonstrated by the Court's denial of Panoramic's motion for summary judgment. Moreover, the jury's ultimate verdict simply does not vitiate the objective reasonableness of Wiley's defenses. *See supra* at 2-7. To the contrary, Wiley's assertion of not just plausible, but well-placed (both legally and factually) defenses cannot serve as the primary basis for an attorneys' fee award, especially where myriad other factors, including the limited degree of plaintiff's success, do not support such an award: "Copyright defendants with strong legal or factual defenses should not be deterred from litigation by the possibility that their refusal to settle an invalid claim will be held against them after they prevail." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998); *see supra* at 4-6 (citing cases noting that fee awards are typically inappropriate in close infringement cases that clarify boundaries of copyright law).

In this context, and in light of the significant statutory damages already awarded to Panoramic and its counsel, *see supra* at 8-11, any fee award to Panoramic must be reduced to

reflect the substantially reduced success the plaintiff achieved, and must be reasonably proportionate to the amount of damages obtained.[4]  Panoramic's contention that its attorneys will be "financially 'in the hole'" if no fees, or reduced fees, are awarded is itself a fundamentally flawed misrepresentation of the terms of the contingent fee agreement between Panoramic and those attorneys.[5]  Mot. at 5.  Rather, that agreement makes clear that any fee recovery by Panoramic's attorneys will be *in addition* to the contingency funds – apparently 40% of the jury's verdict, plus costs – that those attorneys will already receive.  *See* Beylkin Decl., ¶ 10 & Ex. I at 4 ¶ 4 ("[Panoramic] will pay the attorney (including any associated counsel) 45% of the gross amount collected. 'Gross amount collected' means the amount collected before any subtraction of expenses and disbursements. *'The amount collected' excludes specially awarded attorneys' fees or costs awarded by the court, which will be paid to the attorney or the client as ordered*." (emphases added)); *cf. generally Assessment Techs.*, 361 F.3d at 438-39 (adopting

---

[4] Though Wiley does not object to the reasonableness of the hours expended and the hourly rates of Panoramic's counsel, it is clear from the "records" submitted as evidence here that the "invoices" were not in fact actual invoices, and they were never submitted to Panoramic for payment, nor were the time records – if any – from which those "invoices" were constructed contemporaneously maintained.  Indeed, it appears that the attorneys' "records" were likely reconstructed in the aftermath of the trial verdict.  *E.g.*, Dkt. No. 206-02.

[5] At no point during this case – including in connection with this motion – has Panoramic produced a signed copy of its fee agreement with its counsel.  The absence of such a submission in support of this fee petition is itself grounds to reduce or deny the requested award.  *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 438-39 (7th Cir. 2004) ("[I]n a copyright case . . . [t]he best evidence of the value of the lawyer's services is what the client agreed to pay him.").  In fact, the only documentary evidence of the plaintiff's contingent fee rate is an email from Panoramic's eventual counsel soliciting their retention at a ***45% rate***.  *See* Beylkin Decl., ¶ 10 & Ex. I at 4 ¶ 4.  Panoramic's principal Doug Segal has testified – by never produced documents showing – that he negotiated a 40% contingency for this case.

Third Circuit standard that fee "contract places a ceiling on what the court can award the lawyer" in a copyright case (citing *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir. 1986)).[6]

## CONCLUSION

For the foregoing reasons, the Court should deny Panoramic's request for attorneys' fees and non-taxable costs. In the alternative, if the Court is inclined to award the plaintiff any fees or costs, the Court should enter a significantly reduced award reflecting the limited success that Panoramic ultimately achieved as compared to the claims and causes of action it initially pleaded.

Dated: April 22, 2015

By:   */s/ Michael Beylkin*
     Christopher P. Beall
     Michael Beylkin
     Mara J. Gassmann
     Levine Sullivan Koch & Schulz, LLP
     321 West 44th Street, Suite 1000
     New York, New York 10036
     (T): (212) 850-6100
     (F): (212) 850-6299
     cbeall@lskslaw.com
     mbeylkin@lskslaw.com
     mgassmann@lskslaw.com

     *Attorneys for Defendant*
     *John Wiley & Sons, Inc.*

---

[6] Although the Seventh Circuit did not adopt the *Assessment Technologies*' cap with respect to contingent-fee contracts, its refusal to do so was for fear that "[e]ven a generous [contingent-fee] contract will not yield a significant fee if the damages that the plaintiff obtains are slight: 40 percent of $1,000 is not enough to induce a competent lawyer to handle even a slam-dunk case." 361 F.3d at 439; *cf.* Mot. at 7 n.20 (citing *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 921 (7th Cir. 2007)). As noted *supra*, the jury's award here is an extraordinary sum compared to the very modest licensing fees for the photos, and there is simply no evidence that Panoramic would not have been able to retain its counsel at whatever contingent fee was ultimately negotiated.

**CERTIFICATE OF SERVICE**

      I, Michael Beylkin, an attorney and counsel of record for Defendant John Wiley & Sons, Inc., certify that I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF electronic filing system, which will send automated notification of this filing to all parties of record on this date.

Dated: April 22, 2015                                        By:     */s/ Michael Beylkin*